[Southern Steel Co. v. Hopkins, et al.]

# Southern Steel Co. *v.* Hopkins, *et al.*

*Bill to Enjoin Numerous Tort Actions, and to Determine Liability and Damage.*

(Decided January 29, 1911.   Rehearing denied December 21, 1911,
57 South. 11.)

*Injunction; Multiplicity of Suits; Right to Maintain.*—There being merely a community of interests in the questions of law and of fact involved, a bill will not lie by a coal company to enjoin 110 separate suits against said company for the negligent death of employees killed in a mine explosion until determination by the court in such suit of the liability of the company.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the Southern Steel Company against Wiley Hopkins, administrator, and others, to enjoin a number of tort actions, to ascertain liability and damage. From a decree for respondents, complainants appeal. Affirmed.

See in this connection same case reported in 157 Ala. 175; 47 South. 274; 20 L. R. A. (N. S.) 848; 131 Am. St. Rep. 20.

J. T. STOKELY, for appellant.   The bill had equity on the ground of multiplicity of suits, and the court erred in sustaining demurrers thereto.—*Morgan v. Morgan, et al.,* 3 Stew. 383; *Cleveland v. Ins. Co.,* 44 South. 37; *So. Steel Co. v. Hopkins,* 157 Ala. 175, and authorities cited in said case.

STALLINGS & DRENNEN, FRANK S. WHITE & SONS, and JOHN C. CARMICHAEL, for appellee.   The bill was without equity, the court properly sustained demurrers thereto, and this court should recede from the position

taken in the case of *So. S. Co. v. Hopkins,* 157 Ala. 175.
—*Brown v. Birmingham,* 140 Ala. 590; *Brickerhoff v. Bostwick,* 105 N. Y. 567, 12 N. E. 58; *Nat. Tube Co. v. Smith,* 110 Am. St. Rep. 771, 1 L. R. A. (N. S.) 195; *Deepwater Ry. Co. v. Motter,* 116 Am. St. Rep. 875; *Freer v. Davis,* 94 Am. St. Rep. 895, 59 L. R. A. 556; Story's Equity, Sections 72, 73; *Sadilier v. N. Y.,* 185 N. Y. 408, 78 N. E. 272; *Buzard v. Huston,* 119 U. S. 347; *Winslow v. Geness,* 64 Mich. 84; *Dyer v. Doig,* 2 Ves. Jr., 486; *Marsellis v. Morris Canal Co.,* 7 N. J. Eq. 31; *Ward v. Northumberland,* 2 Anst. 469; *Morris and E. R. Co. v. Pueden,* 20 N. J. Eq. 531; *Hinchman v. Patterson R. Co.,* 17 N. J. Eq. 75; 86 Am. Dec. 252; *Murphy v. Mayor of Wilmington,* 22 Am. St. Rep. 355; *Ritchie v. Dorland,* 6 California 40; *Schulenberg v. Town of Hayward,* 20 Fed. 425; *Scottish Union Insurance Co. v. Mohlman,* 73 Fed. 68; *Dodd v. City of Hartford,* 25 Conn. 236; *Swift v. Larrabee,* 31 Conn. 239; *Doggett v. Hart,* 58 Am. Dec. 68; *Woodward v. Seeley,* 50 Am. Dec. 445; *Storr v. P. & A. R. R. Co.,* 11 So. Rep. 229; *Booneville National Bank v. Blakely,* 76 N. E. Rep. 534; *School District v. Rice,* 81 Pac. Rep. 155; *Scott v. Erie R. R. Co.,* 36 N. J. Eq. 355; *Scott v. McFarland,* 70 Fed. Rep. 281; *Merrill v. Lake,* 47 Am. Dec. 380; *Hardin v. Swoope,* 47 Ala. 276; *Zulinger v. Hefner,* 35 S. E. page 4; *Tompkins v. Craig,* 93 Fed. 885; *Scott v. Neeley,* 140 U. S. 106; *Elridge v. Hill,* 2 Johns, 281; *N. T. R. Co. v. Amacker,* 49 Fed. 529; s. c. 46 Fed. Re. 283; *Manchester Fire Ins. Co. v. Stockton,* 38 Fed. 378; *Dodge v. Briggs,* 27 Fed. 160; *Hughes v. Hanna,* 22 South. 613; *Jones v. Rowbotham,* 19 L. R. A. 663; *Richardson v. Davidson,* 53 Hun. 630; 5 N. Y. Supp. 617; *Town of Mt. Zion v. Gillam,* 14 Fed. 123.

[Southern Steel Co. v. Hopkins, et al.]

MAYFIELD, J.—This is a suit in equity to enjoin the prosecution of 110 separate actions at law. The sole ground of equity jurisdiction upon which the suit is based is to prevent a multiplicity of suits. The separate actions at law were brought by the administrators of 110 unfortunate workmen, who lost their lives by an explosion in a coal mine. Each of these 110 actions was brought, under the employer's liability act, to recover damages for the wrongful death of the respective intestate; was brought against the same defendant, the complainant in this suit; and sought to recover on account of negligence in causing or allowing the explosion which killed the unfortunate workmen.

The prayer for relief is as follows: "Your orator further prays that your honor will grant unto your orator a preliminary writ of injunction, enjoining and restraining each and all of said parties defendant and their attorneys and successors from all further proceedings in said actions at law, or prosecuting the same in any manner, until the further orders of this court, and that your honor will proceed to hear and determine the question of the liability vel non of said Alabama Steel & Wire Company, in the premises, and, if there should prove to be any such liability, that your honor will further determine the extent thereof, and the manner and mode in which the same shall be prorated or paid."

This appeal, for the second time, brings up for our decision the equity of this bill, a full statement of the facts of which, and a discussion of the law involved, may be found in the reports of the case in 157 Ala. 175, 47 South. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20.

The question of law involved in this suit is this: Has a court of equity jurisdiction to enjoin numerous tort

[Southern Steel Co. v. Hopkins, et al.]

actions, brought by different plaintiffs against the same defendant, when there is merely a community of interest in the questions of law and of fact involved, and no common title, no community of interest or of right, in the subject-matter? This question was decided in the affirmative by this court on the former appeal. After the cause was remanded, the complainant amended the bill, and other defendants demurred, and again raised the equity of the bill as last amended. The chancellor again sustained the demurrer, and from that decree the complainant again appeals to this court.

We regret the necessity of overruling our former decision, and recognize and appreciate the wisdom in the maxim, that "it is as important that the law be certain as that it be right;" yet it is not only our prerogative, but our duty, to overrule a former decision, when we are convinced that it is fundamentally wrong, both in theory and in practice.

There is a sharp and distinct conflict in the decisions of the various courts upon this question; but, after a careful examination and review of many of them, and of the text-books upon the subject, we are constrained to recede from the holding on the former appeal, and to follow that line of decisions and those text-books which deny equity jurisdiction to prevent a multiplicity of suits at law, in the absence of a common title, or of some community of right or interest, in the subject-matter among the several parties. To state the proposition differently, we now hold that a community of interest among the several parties in the questions of law and of fact involved is not sufficient to confer jurisdiction upon a court of equity to enjoin the several tort actions at law, though brought against the same defendant, and though each may depend upon the same state of facts.

[Southern Steel Co. v. Hopkins, et al.]

Our statute (section 5965 of the Code) provides as follows: "The Supreme Court, in deciding each case, when there is a conflict between its existing opinion and any former ruling in the case, must be governed by what, in its opinion at the time, is law, without any regard to such former ruling on the law by it; but the right of third persons, acquired on the faith of the same former ruling, shall not be defeated or interfered with by or on account of any subsequent ruling."

The importance of this question of law and practice involved is such that we deem it proper to state, as briefly as we may, the reasons which have impelled us to overrule the former decision.

We have reached the conclusion that the law has been correctly settled, both in England and America, differently from that declared by this court in the former decision of this case. We think there is little doubt that the courts have been led astray upon this subject by following what Mr. Pomeroy stated in his valuable work on Equity Jurisprudence (2d Ed.) § 269. We recognize both the ability and the authority of Mr. Pomeroy as a writer upon equity jurisprudence; in fact, we concede, as we have often stated in our opinions, that he is probably the leading and the best authority upon this subject; but he is human, and must therefore sometimes err. Prior to this text of Mr. Pomeroy, there were, we are certain, few, if any, adjudicated cases which supported the text, or which would sustain the equity of a bill which rested solely upon the jurisdiction of equity to prevent a multiplicity of suits, when there was no common title, no community of interest or of right, in the subject-matter among the several individuals whose actions at law were sought to be enjoined.

It must be conceded, however, that there are a number of decisions, since the text, which support it; some

of them extending the doctrine further, probably, than it was ever intended or supposed by Mr. Pomeroy. Chief among these is the decision of our own court in this case on the former appeal. Another is that of *Whitlock v. Yazoo,* 91 Miss. 779, 45 South. 861. ·These two cases have certainly extended the Pomeroy doctrine further than have any others, before or since their rendition.

Chief Justice McClellan, in the *Turner Case,* 135 Ala. 73, 33 South. 132, after devoting several pages of the opinion to the fallacy of the Pomeroy doctrine, which was followed and given effect to by this court on the former appeal, concluded as follows, which is quoted with approval from the *Tribette Case,* 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642: "But we affirm, after careful examination and full consideration, that Pomeroy is not sustained in his 'conclusions,' stated in section 269 of his most valuable treatise, and the cases he cited do not maintain the proposition that mere community of interest 'in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body,' is ground for the interposition of chancery to settle, in one suit, the several controversies. There is no such doctrine in the books, and the zeal of the learned and usually accurate writer mentioned, to maintain a theory, has betrayed him into error on this subject. It has so blinded him as to cause the confounding of distinct things in his view of this subject, to wit, joinder of parties, and avoidance of multiplicity of suits."

On the other hand, the opinion of Chief Justice Tyson, on the former appeal, referring to the same doctrine, quotes approvingly from another Mississippi case, as follows: "We think the doctrine announced by

Pomeroy is sound, and clearly established by the best considered modern cases." Chief Justice Tyson also states in his opinion that the *Tribette's Case* was directly opposed to his views of the law, and to the other Mississippi cases quoted from by him, but that the *Turner Case* was not so opposed, except as to certain dicta therein.

In this last statement as to the *Turner Case*, we think the opinion in the former case is in error. It is certain that the *Turner Case* followed the *Tribette Case*, and gave sanction to every doctrine announced therein. Chief Justice McClellan, in *Turner's Case*, referring to the doctrine that, in order for a court of equity to enjoin a multiplicity of actions at law, there must be a common title to, or common interest in, the subject-matter involved, and that a mere common interest in a question of law is not sufficient, states that, "this position is nowhere better nor more fully stated than by Campbell, C. J., in *Tribette's Case*, * * * and as the opinion treats fully of Mr. Pomeroy's position, and demonstrates its fallacy we quote it in part," etc., and then proceeds to quote several pages from the opinion in *Tribette's Case*.

The opinion in the *Turner Case* thus shows on its face that Chief Justice McClellan therein quoted more than half of Chief Justice Campbell's opinion in the *Tribette Case*. This, we think, makes it certain that if the decision in the *Tribette Case* was in conflict with Chief Justice Tyson's opinion it was unquestionably in conflict with the decision in *Turner's Case* which not only followed the decision in *Tribette's Case*, but literally quoted pages of it, and thus expressly adopted it.

Chief Justice McClellan, in the *Turner Case*, says: "This court has never undertaken to define the jurisdiction of equity to prevent a multiplicity of suits, nor to

lay down general principles from which the several categories of cases in which that jurisdiction may be invoked is possible of statement. All that has been decided or said by this court bearing upon the subject evidences an inclination toward the confinement of this jurisdiction to a narrow field, and a purpose to conserve in its full integrity the right of trial at law and by juries"—citing many authorities. Further on in that opinion he says that: "Nothing has ever been said or decided in this court giving any countenance to the proposition that 'a common interest in the question at issue only' will give to numerous parties so interested a standing in equity for the prevention of a multitude of suits. The intolerable consequences to which the recognition of such a doctrine would logically lead are sufficiently indicated in the cases to which we have referred. * * * It is an elementary and fundamental proposition that a party who seeks to come into equity must himself have an equity, or he cannot maintain a bill. The wholly fortuitous, accidental, and collateral fact that numerous other persons have like, but entirely independent and disconnected, legal rights, estates, or defenses, cannot, upon any conceivable principle, invest him with any right, legal or equitable, and his rights, whatever they may be, are precisely the same as if no other person had similar rights. * * * Jurisdiction in equity is not entertained on any notion that the court has an equity; that it will take jursidiction to prevent a multiplicity of suits, in order to lessen its own labors or those of other courts. The equity upon which the invocation is made must reside in the party making it. When numerous parties have each the same equity, they may in a proper case unite in one bill for its declaration and effectuation; each having the separate right to come into equity upon an identical ground, they will

be allowed to come in together, on the theory of pre-
venting a multiplicity of suits.  So, where one party is
subjected to or threatened with numerous and vexa-
tious actions at law, or is the victim of numerous and
continuing wrongs, so that a multitude of suits would
be necessary for his redress at law, he may come into
chancery, because the necessity for numerous suits or
defenses is in itself such a wrong and vexation as vests
him with an equity. ·But the mere fact that a defendant
has committed a tort, by which he injured one or a hun-
dred parties, cannot give him an equity to prevent each
and every one of the parties so injured from maintain-
ing an action against him to recover damages.  If there
had been a combination or conspiracy between such nu-
merous parties to vex and harass the complainant by
numerous suits, then he would have an equity to enjoin
their prosecution.  But the mere fact that this tort has
injured a hundred persons, and that it will save him
and the court time and lessen the expenses of the liti-
gation, does not give him any equity to go into a court
of chancery to enjoin or prevent a multiplicity of suits."

It was pointed out by Chief Justice Campbell, in the
*Tribette Case,* and by Chief Justice McClellan, in the
*Turner Case,* that the authorities cited by Mr. Pomeroy
do not support the text upon which the former decision
of this case was based.  We will now proceed to show
that the authorities cited by Chief Justice Tyson, in his
opinion in the former decision of this case, do not sup-
port the text of Mr. Pomeroy, nor the former decision
in this case.

We think we have shown that the *Turner Case,* cited
in favor of it, not only fails to support the opinion to
which it is cited, but is diametrically opposed to it, and
is based solely upon the *Tribette Case,* which Chief Jus-
tice Tyson concedes is opposed to his opinion and de-

cision. The case of *Crawford v. Railroad Co.*, 83 Miss. 708, 36 South. 82, 102 Am. St. Rep. 476, cited, does not support the conclusion, because it rested upon an independent equity, which sought to compel the surrender and cancellation of forty odd written instruments, upon the ground that they were obtained by the same fraud. The case of *Sheffield Water Works Company,* which is so strongly relied on by Chief Justice Tyson, was also based upon an independent equity, to wit, the delivery and cancellation of more than 7,000 instruments, upon the ground that they were fraudulently issued, and that they were used as the foundation for the prosecution of the suits based thereon. That case did not seek to enjoin actions of tort, brought by the persons injured by the bursting of a water pipe, as might be inferred from the reference made to it in the opinion. While more than 7,000 persons were injured by the bursting of the pipe, certificates were issued in compromise and settlement of their claims against the company, and the bill in that case was filed by the company to compel the surrender and cancellation of such certificates and claims, on the ground that they were secured by fraud. It was only a question of multifariousness involved in each of the two cases referred to, and not the question of the jurisdiction to prevent a multiplicity of suits. The case of *York v. Pinkerton,* 1 Atkins, 282, was a bill of peace, by one in possession of land, to settle a disputed right of fishery against several persons who were claiming it, which, of course, is not an authority in point. The other cases cited are reviewed in the note to that case, as reported in 20 L. R. A. (N. S.) 849. Each of the cases cited has been examined, and none of them supports the conclusion reached in that case. The *Whitlock Case,* however, does support the *Hopkins Case,* but it is in direct conflict with the *Tribette Case,*

which it does not cite or mention, though it does cite the case of *Railroad Co. v. Garrison,* 81 Miss. 264, 32 South. 996, which quotes approvingly from the *Tribette Case.* We concede, however, that later Mississippi cases have in effect departed from the *Tribette Case,* but they have not done so expressly, nor have they ever criticised it, so far as we have been able to find.

We base our conclusion chiefly upon the *Tribette Case,* which we concede to be the leading authority in the world upon the question of the jurisdiction of equity to prevent a multiplicity of suits. It has been reprinted, time and again, and copied into the latest editions of most of the text-books upon the subject, as stating the true doctrine. This case has been followed by Mr. Bliss (Code Pleading, § 6), by Mr. Beach (Injunctions, § 543), and Mr. High (Injunctions, § 65a).

Mr. Pomeroy, in his last edition on Equity Jurisprudence, devotes a great deal of space and attention to the *Tribette Case,* because it had taken him to task on this question, and adds two new sections to that edition, to wit, $25\frac{1}{2}$ and $25\frac{3}{4}$, to set himself right in this matter. It is quite evident from an examination of this last edition that the author does not go to the extent of upholding the equity jurisdiction of a case like the one under consideration. While he does criticise the tone of the opinion, and some things that are said by Chief Justice Campbell in the *Tribette Case,* yet, in the notes to his text, he admits that the decision in that case was correct.

The entire subject under review has been fully considered, and the authorities thereon discussed, in the recent case of *Vandalia Coal Company v. Lawson,* 43 Ind. App. 226, 87 N. E. 47. That opinion fully sustains the decision of Chief Justice Campbell in the *Tribette Case,* and that of Chief Justice McClellan in the *Turner*

*Case,* and criticises rather severely our former decision in this case.

There is also a recent case (that of *Ducktown v. Fain,* 109 Tenn. 56, 70 S. W. 813) which cites approvingly the *Tribette Case,* and sustains the proposition that a community of interest in the subject-matter is necessary, in order for equity to take jurisdiction to prevent a multiplicity of suits. The last two cases cited and reviewed many authorities upon the question, and, we think, show beyond question that our former decision in the *Hopkins Case* was wrong, and should be overruled. In fact, we are of the opinion that the two new sections (the only ones) added in the last edition of Pomeroy's Equity Jurisprudence support us in the contention that there is no equity in the bill under consideration.

In section 25½, speaking to this question, it is said: "The equity suit must result in a simplification or consolidation of the issues; if after the numerous parties are joined there still remain several issues to be tried between the several parties, nothing has been gained by the court of equity in assuming jurisdiction. In such a case, while the bill has only one number upon the docket and calls itself a single proceeding, it is in reality a bundle of separate suits, each of which is no doubt similar in character to each of the others, but rests nevertheless upon the distinct liability of one defendant." (The author must have had this case in mind.)

All the text-writers on the subject, who have revised their texts since the decision in the *Tribete Case,* seem to have followed it; some of them literally quoting it at length. Beach, in his work on Injunctions (section 543), says: "While courts of equity will freely exercise their jurisdiction in order to prevent an unnecessary and vexatious multiplicity of suits, they will not enjoin the prosecution of several pending actions at

law, instituted by different plaintiffs, and compel their consolidation into a single suit in equity, at the instance of the common defendant at law, merely because the cause of action in each of the several actions at law arose from the same act of negligence or other single tort of the common defendant at law." He then sets out the opinion in the *Tribette Case* at length in a note to the text.

Mr. High, in his last work on Injunctions, adds a new section (65a), which states the rule as follows: "It is to be observed that, in order to justify relief by injunction for the prevention of a multiplicity of suits, there must be some common subject-matter in controversy, or some common right of interest therein, and that without this a mere community of interest in the questions of law and fact to be determined constitutes no basis for equitable relief. Thus, where numerous actions at law have been brought by separate plaintiffs against the same defendant to recover damages resulting from a fire started by sparks from complainant's locomotive, the mere fact that the questions of law and fact are the same in all the actions, and that the various parties have a common interest in those questions, will not authorize an injunction against the prosecution of the actions and the determination of the issues in equity." The only authorities cited in support of this text are the *Tribette* and *Turner Cases*.

The distinction between a community of interest in the subject-matter which will support the jurisdiction of chancery to prevent a multiplicity of suits, and a common interest in the questions of law and of fact which will not support it, is well illustrated in the *Tribette Case* and the authorities cited. It must be a right enjoyed in common with all the parties, and in such manner that the invasion of the right of one is an

invasion of the right of all, such as a right of common fishery.—Storey, Eq. Jur. 854, 855; Adams, Eq. 199.

"Two or more owners of mills propelled by water are interested in preventing an obstruction above that shall interfere with the downflow of the water, and may unite to restrain it or abate it as a nuisance; but they cannot unite in an action for damages, for, as to the injury suffered, there is no community of interest."—Bliss, Code Pl. § 76.

"Where several persons, acting independently, combine to produce a nuisance, such persons may be joined as defendants in a suit for injunctive relief. But there can be no joinder, either of complainants or defendants, for the purpose of recovering damages for the injuries caused by such nuisance."—*Demarest v. Hardham,* 34 N. J. Eq. 469; *Vandala Coal Co. v. Lawson,* 43 Ind. App. 242, 8 N. E. 53.

It is thus made to appear that all of the text-writers who have written since the *Tribette Case* have followed it and revised their texts accordingly. Even Mr. Pomeroy, though he speaks of the case as sensational in many of its statements, says "it has been so frequently reprinted that it appears to call for special notice," and he proceeds to quote from it and to comment adversely upon it as to those statements which he calls sensational; yet the effect of his text and notes, as revised, is to say that the case was correctly decided.—See section $25\frac{1}{2}$ and note, 1 Pomeroy's Eq. Jur. p. 425. This being true, it follows that our decision in this case on the former appeal was wrong.—*Roanoke Guano Co. v. Saunders,* 173 Ala. 347, 56 South. 198. We deem it just to Mr. Pomeroy, however, to say that we do not think his original text supported the decision of this court on the former appeal, and it is certain that the revised text does not.

[Southern Steel Co. v. Hopkins, et al.]

The evil consequences of maintaining the equity of a bill like this is illustrated clearly by the record in this case. The explosion which killed the 110 workmen in question, and which is the subject of this controversy, occurred February 20, 1905, and because of this proceeding a trial of those 110 damage suits has been delayed for more than six years. Suppose the equity of the bill should be sustained and the parties proceed to trial, and the complainant fail, then the parties plaintiff, after a delay of many years, will have to be remitted to courts of law to try each of these cases separately. Or, if the complainant succeeded, still there must be 110 trials in the court of chancery, not only as to the liability vel non, as to each of the persons killed, but as to the amount of damages recoverable in each case. If the complainant is liable under the employer's liability act, the amount for which it is liable would be different in each of the 110 cases, depending upon the earning capacity of each decedent, which, in its turn, depends upon age, character, habits, etc.

It would be difficult to select a case that would more clearly demonstrate the impracticability of the rule than the one under consideration. Contemplate 110 separate answers, and as many pleas and demurrers in one suit, and the innumerable issues of law and of fact that would be raised thereby, and the defense being conducted by 110 different attorneys, or the parties deprived of the right to have the counsel of their choice— a worse confusion could scarcely be imagined. It could be likened unto the confusion of tongues at the building of the Tower of Babel.

To reach a final decree in this case that would approach justice for all, by a trial of all these issues, and a trial in accordance with our statutes and the rules of law and chancery provided for such cases, would be

wholly impracticable, if not impossible. No stronger or more conclusive argument could be produced to show that the rule announced on the former appeal is wrong than would be an attempted trial of this case upon its merits, in a chancery court, under the prayer of the bill quoted above.

No error appearing in the record, the decree of the chancellor is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON, ANDERSON, McCLEL-LAN, SAYRE, and SOMERVILLE, JJ., concur.