## CREW LEVICK COMPANY *v.* COMMONWEALTH OF PENNSYLVANIA.

### ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 499.   Argued October 17, 1917.—Decided December 10, 1917.

This court determines the constitutionality of a state tax upon its own judgment of the actual operation and effect of the tax, irrespective of its form and of how it is characterized by the state courts.

A state tax on the business of selling goods in foreign commerce, measured by a percentage of the entire business transacted, is both a regulation of foreign commerce and an impost or duty on exports, and is therefore void. *Ficklen* v. *Shelby County Taxing District*, 145 U. S. 1, distinguished.

256 Pa. St. 508, reversed. ·

THE case is stated in the opinion.

*Mr. David Wallerstein*, with whom *Mr. Charles A. Frueauff* was on the brief, for plaintiff in error.

*Mr. Joseph L. Kun*, Deputy Attorney General of the State of Pennsylvania, with whom *Mr. Francis Shunk Brown*, Attorney General of the State of Pennsylvania, was on the brief, for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

The State of Pennsylvania, by an Act of May 2, 1899, P. L., p. 184,[1] imposes an annual mercantile license tax

---

[1] "Section 1. Be it enacted, &c., That from and after the passage of this act, each retail vender of or retail dealer in goods, wares and merchandise shall pay an annual mercantile license tax of two dollars, and all persons so engaged shall pay one mill additional on each dollar of

of three dollars upon each wholesale vender of or dealer in goods, wares, and merchandise, and "one-half mill additional on each dollar of the whole volume, gross, of business transacted annually," and like taxes at another rate upon retail venders, and at still another upon venders at an exchange or board of trade. In the year 1913 plaintiff in error sold and delivered at wholesale, from a warehouse located in that State, merchandise to the value of about $47,000 to purchasers within the State, and merchandise to the value of about $430,000 to customers in foreign countries: the latter sales usually having been negotiated by agents abroad who took orders and transmitted them to plaintiff in error at its office in the State of Pennsylvania, subject to its approval, while in some cases orders were sent direct by the customers in foreign countries to plaintiff in error; and the goods thus ordered, upon the acceptance of the orders, having been shipped direct by plaintiff in error from its warehouse in Pennsylvania to its customers in the foreign countries. Under the Act of 1899 a mercantile license tax was imposed upon plaintiff in error, based upon the amount of its gross annual receipts. Plaintiff in error protested against the assessment of so much of the tax as was based upon the

---

the whole volume, gross, of business transacted annually. Each wholesale vender of or wholesale dealer in goods, wares and merchandise shall pay an annual mercantile license tax of three dollars, and all persons so engaged shall pay one-half mill additional on each dollar of the whole volume, gross, of business transacted annually. Each dealer in or vender of goods, wares or merchandise at any exchange or board of trade shall pay a mercantile license tax of twenty-five cents on each thousand dollars worth, gross, of goods so sold.

"Section 2. And it is provided that all persons who shall sell to dealers in or venders of goods, wares and merchandise, and to no other person or persons, shall be taken under the provisions of this act [to] be wholesalers; and all other venders of or dealers in goods, wares and merchandise shall be retailers, and shall pay an annual license tax as provided in this act for retailers."

gross receipts from merchandise shipped to foreign countries. The Court of Common Pleas of Philadelphia and, upon appeal, the Supreme Court of the State (256 Pa. St. 508) sustained the tax, overruling the contention that it amounted to a regulation of foreign commerce and also was an impost or duty on exports levied without the consent of Congress, contrary to §§ 8 and 10 of Art. I of the Constitution of the United States.[1]

Whether there was error in the disposition of the federal question is the only subject with which we have to deal.

As in other cases of this character, we accept the decision of the state court of last resort, respecting the proper construction of the statute, but are in duty bound to determine the questions raised under the Federal Constitution upon our own judgment of the actual operation and effect of the tax, irrespective of the form it bears or how it is characterized by the state courts. *Galveston, Harrisburg, & San Antonio Ry. Co.* v. *Texas*, 210 U. S. 217, 227; *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350, 362; *Kansas City &c. Ry. Co.* v. *Kansas*, 240 U. S. 227, 231.

In this case, however, the characterization of the tax by the state court of last resort is a fair index of its actual operation and effect upon commerce. Soon after the passage of the act, in *Knisely* v. *Cotterel*, 196 Pa. St. 614,

---

[1] Literally, the objection was that a tax based upon the gross receipts for merchandise shipped to foreign countries would be a "tax levied by the *United States of America* upon commerce with foreign nations, in violation of Article I, Section 8, of the Constitution of the United States, and would also be an impost or duty on exports levied by the State of Pennsylvania without the authority of an Act of Congress in violation of Article I, Section 10, of the Constitution of the United States." The description of the tax as "levied by the United States of America" evidently was a slip, and so understood by both courts, as appears from the opinion of the Court of Common Pleas (unreported), of which only the conclusion is quoted in the opinion of the Supreme Court.

that court was called upon to construe it and to answer objections raised under the constitution of the State and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and in the course of an elaborate opinion declared (p. 630): "An examination of the details of the provisions of the present act makes it clear that the tax, as held by the learned judge below, is upon the business of vending merchandise, and that the classification is based on the manner of sale, and within each class the tax is graduated according to the gross annual volume of business transacted. This is apparent from the fact that the amount of the tax over the small fixed license fee is determined in every case by the volume of business, measured in dollars, and the rate at which it is to be levied is according to the manner of sale."

The bare question, then, is whether a state tax imposed upon the business of selling goods in foreign commerce, in so far as it is measured by the gross receipts from merchandise shipped to foreign countries, is in effect a regulation of foreign commerce or an impost upon exports, within the meaning of the pertinent clauses of the Federal Constitution. Although dual in form, the question may be treated as a single one, since it is obvious that, for the purposes of this case, an impost upon exports and a regulation of foreign commerce may be regarded as interchangeable terms. And there is no suggestion that the tax is limited to the necessities of inspection, or that the consent of Congress has been given.

We are constrained to hold that the answer must be in the affirmative. No question is made as to the validity of the small fixed tax of $3 imposed upon wholesale venders doing business within the State in both internal and foreign commerce; but the additional imposition of a percentage upon each dollar of the gross transactions in foreign commerce seems to us to be, by its necessary effect, a tax upon such commerce, and therefore a regulation of

it; and, for the same reason, to be in effect an impost or duty upon exports. This view is so clearly supported by numerous previous decisions of this court that it is necessary to do little more than refer to a few of the most pertinent. *Case of the State Freight Tax,* 15 Wall. 232, 276–277; *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489; *Fargo* v. *Michigan,* 121 U. S. 230, 244; *Philadelphia & Southern Steamship Co.* v. *Pennsylvania,* 122 U. S. 326, 336; *Leloup* v. *Port of Mobile,* 127 U. S. 640, 648; *McCall* v. *California,* 136 U. S. 104, 109; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217, 227.

Most of these cases related to interstate commerce, but there is no difference between this and foreign commerce, so far as the present question is concerned.

The principal reliance of the Commonwealth is upon *Ficklen* v. *Shelby County Taxing District,* 145 U. S. 1. Undoubtedly that case is near the border line; but we think its authority would have to be stretched in order to sustain such a tax as is here in question. Consistently with due regard for the constitutional provisions, we are unable thus to extend it. In that case the complaining parties were established in business within the taxing district as general merchandise brokers, and had taken out general and unrestricted licenses to do business of all kinds, both internal and interstate. As it happened, one of them (Ficklen), during the year in question, did an interstate business exclusively, and the other (Cooper & Co.) did a business nine-tenths of which was interstate. And the court, by Mr. Chief Justice Fuller, said (p. 21): "Where a resident citizen engages in general business subject to a particular tax, the fact that the business done chances to consist, for the time being, wholly or partially in negotiating sales between resident and non-resident merchants, of goods situated in another State, does not necessarily involve the taxation of interstate commerce, forbidden by the Constitution;" and again (p. 24): "What position

they [the plaintiffs in error] would have occupied if they had not undertaken to do a general commission business, and had taken out no licenses therefor, but had simply transacted business for non-resident principals, is an en-entirely different question, which does not arise upon this record." Besides, the tax imposed in the *Ficklen Case* was not directly upon the business itself or upon the volume thereof, but upon the amount of commissions earned by the brokers, which, although probably corresponding with the volume of the transactions, was not necessarily proportionate thereto. For these and other reasons the case has been deemed exceptional.

In *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 695, the court, again speaking by Mr. Chief Justice Fuller, said: "It is settled that where, by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained."

The tax now under consideration, so far as it is challenged, fully responds to these tests. It bears no semblance of a property tax, or a franchise tax in the proper sense; nor is it an occupation tax except as it is imposed upon the very carrying on of the business of exporting merchandise. It operates to lay a direct burden upon every transaction in commerce by withholding, for the use of the State, a part of every dollar received in such transactions. That it applies to internal as well as to foreign commerce cannot save it; for, as was said in *Case of the State Freight Tax*, 15 Wall. 232, 277, "The State may tax its internal commerce, but if an act to tax interstate or foreign commerce is unconstitutional, it is not cured by including in its provisions subjects within the domain of the State." That portion of the tax which is measured by the receipts from foreign commerce necessarily varies in proportion to the

volume of that commerce, and hence is a direct burden upon it.

So obvious is the distinction between this tax and those that were sustained in *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *U. S. Express Co.* v. *Minnesota*, 223 U. S. 335, 347; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, 87; *Kansas City &c. Ry. Co.* v. *Kansas*, 240 U. S. 227, 232, 235; and some other cases of the same class, that no time need be spent upon it.

The judgment under review must be

*Reversed.*