## AMERICAN MFG. CO. v. CITY OF ST. LOUIS, MO. *

(Circuit Court of Appeals, Eighth Circuit. October 20, 1925.)

No. 6975.

Commerce ⬅64—Ordinance requiring manufacturer to pay license tax measured by sales made held not invalid as imposing burden on interstate commerce.

Ordinance enacted under Rev. St. Mo. 1919, § 9006, which required every manufacturer to take out a license and pay a license tax of $1 on each $1,000 of sales made, *held* not invalid as a burden on interstate commerce, though tax

Rehearing denied January 14, 1926.

was collected on goods sold to purchasers in other states, since tax was based on value of goods manufactured, arrived at from sales made.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by the American Manufacturing Company against the City of St. Louis, Mo. Judgment for defendant, and plaintiff brings error. Affirmed.

S. Mayner Wallace, of St. Louis, Mo., for plaintiff in error.

Michael J. Hart, of St. Louis, Mo. (Oliver Senti and Arthur H. Bader, both of St. Louis, Mo., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. The plaintiff in error is a corporation engaged in the manufacture of bagging for cotton and other goods; its properties are located, and its business carried on, in the states of Massachusetts, New York, Pennsylvania, South Carolina, and Missouri. Its products manufactured at the defendant city, within the state of Missouri, from the standpoint of ultimate disposition, are of three classes: (1) Those sold and shipped direct by it from points within said city to purchasers within the state of Missouri. (2) Those sold and shipped from said city to purchasers in various states other than Missouri. (3) Products shipped by the manufacturer from said city to its warehouses in states other than Missouri, from which warehouses said products are thereafter sold and shipped by it to purchasers in various other states.

During the year next preceding the first Monday in June, 1920, sales of such products of the first class amounted to $1,317,-770.64, of the second class to $3,167,502.02, and of the third class to $795,781. At all times material to this controversy there were in force in the city of St. Louis sections 396, 397, 398, and 411 of the Revised Code and General Ordinances of the City of St. Louis, Missouri, of 1914.

"Section 396. *Manufacturer Defined.*— Every person, firm or corporation, who shall hold or purchase personal property for the purpose of adding to the value thereof, by any process of manufacturing, refining, or by the combination of different materials, or

shall purchase and sell manufactured articles such as he manufactures or uses in manufacturing, shall be held to be a manufacturer for the purposes of this article, except as is or may be otherwise provided by ordinance.

"Section 397. *License Required—Amount, etc.*—Every person defined to be a manufacturer by the preceding section shall, before doing or offering to do, business as such, procure from the license collector a license therefor, under the provisions of this article, for which there shall be paid the same rate as merchants are required to pay for a license; provided, in collecting license on the sales of tobacco of any kind, on high wines and on beer, the manufacturer shall be permitted to deduct the amount of tax paid the United States from the total sales made by him or them, and if he shall, within the city of St. Louis, do or offer to do any manufacturing business without first complying with the provisions of this article, or shall otherwise violate or fail to comply with any of the provisions of this article he shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than twenty-five dollars nor more than five hundred dollars for each offense.

"No license shall be assignable or transferable."

"Section 398. *Statement of Manufacturer Required—License—When Paid—Publication.*—The license collector or his deputies shall, after the first Monday of March and before the first Monday in June in each year, call on each and every person defined by this article to be a manufacturer, and notify him to furnish, and it shall be the duty of such person, whether so notified or not, to furnish said license collector: First, a statement of the value of the greatest aggregate amount of raw materials, merchandise and finished products (to be listed separately) which he had on hand between the first Monday of March and the first Monday in June in each year on any one day between said times, as well as all tools, machinery and appliances used in conducting his business or owned by him on the first day in June of each year; second, a statement of the aggregate amount of all sales made by him during the year next preceding the first Monday of June, which statement shall be made in writing and delivered to the license collector, verified by the affidavit of the manufacturer, or officer of the corporation making it, if residing in the city; if not, then by some credible person authorized to do so, and the amount of tax and license due there-

on shall be paid to the license collector, at his office, on or before the first Monday of July in each year. It shall be the duty of the license collector, when so directed by the comptroller, to give notice by publication in the papers doing the city printing of any of the provisions or requirements of this article."

"Section 411. *Ad Valorem and Additional Tax Rate—Time of Payment.*—There shall be levied and collected on the value of the largest amount of all goods, wares and merchandise stated as aforesaid an ad valorem tax of one-fifth of one per centum on the value of all such goods, wares and merchandise, situated within the limits of the city, for municipal purposes. This tax shall be paid to license collector on or before the first Monday of July in each year, together with a license which shall be paid every year by the merchant, mercantile firm or corporation (in addition to the per centum hereinbefore stated) of one dollar on each one thousand dollars or fractional part thereof, of sales made by such merchant, mercantile firm or corporation, provided that no license shall be issued under the provisions of this article for a less sum than five dollars, which sum shall be paid by each merchant, mercantile firm or corporation doing a business of five thousand dollars or less per annum."

It will be noted that section 396 defines a manufacturer. The plaintiff in error is a manufacturer under this definition. Section 397 provides that a manufacturer thus defined shall pay a license tax at the same rate as merchants are required to pay. Section 398 provides for the statement or return which the manufacturer is required to make to the license collector, and section 411 provides the rate at which merchants are required to pay for such license. It will be observed that manufacturers and merchants are thus distinctly classified. The license tax which forms the subject of this controversy was imposed under authority of section 9006, Revised Statutes of Missouri, which reads:

"All such cities, for city and local purposes, are hereby authorized to license, tax, and regulate the occupation of merchants and manufacturers, and may graduate the amount of annual license imposed upon a merchant or manufacturer in proportion to the sales made by such merchant or manufacturer during the year next preceding any fixed date."

Pursuant to the provisions of these ordinances the city demanded of plaintiff in error, as a license tax, the sum of $5,282,

based upon its sales under all three classes defined above. Plaintiff in error conceded $1,318 to be due on account of sales made under class 1, but contested the balance of $3,964, upon the ground that sales under classes 2 and 3 were interstate sales, and that the tax sought to be imposed was a direct burden upon interstate commerce. Upon the city's insistence, plaintiff in error paid the disputed amount under protest, and now seeks to recover it in this action.

The contention of the city is that this is purely an occupation tax, ascertained by reference to the volume of manufacture as made definite by the sales made; that this method of computation is a substantial compliance with section 9006 of the Revised Statutes of Missouri, above quoted, and was so intended; that this tax is entirely distinct from the ad valorem taxes levied, and applies to manufacturers as distinguished from merchants, as witness section 397, supra. It is pointed out that, if an occupation tax, in a lump sum, equal to that here in dispute, had been imposed, no possible objection could be made.

Plaintiff in error insists that, "no matter what the argument be, the stubborn and obvious fact remains that the thing directly taxed is an interstate commerce sale of goods." It concedes, however, that the vice of the ordinances of which it complains is in the method or manner of this taxation, and not in the substance. Its counsel says:

"The defendant is attempting, by the wrong way, to accomplish a result that, arrived at in a different fashion, would probably be unobjectionable. In other words, the same revenue might be obtained, free from the present attack, by ordinances providing (actually and in fact) for an occupational license the amount of which would be really measured by the valuation of goods manufactured and sold within a given period—rather than to levy, specifically, upon all sales (interstate and intrastate) thereof; and it might also be competent for such an ordinance to provide that the amount, realized by the sales, should be evidence of the said valuation."

The truth of this statement is not and cannot be questioned, and, in our judgment, it deprives the contention of plaintiff in error of much, if not all, of its practical force. Plaintiff in error evidently relies upon the doctrine announced in Postal Telegraph Cable Co. v. Adams, 155 U. S. 688-695, 15 S. Ct. 268, 360, 39 L. Ed. 311, quoted with approval in Alpha Portland Cement Co. v.

Massachusetts, 268 U. S. 203, 45 S. Ct. 477, decided May 4, 1925, wherein it is said:

"It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained. But property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchises within the state, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the state (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes."

Emphasis is laid upon Looney v. Crane Co., 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230, which holds that:

"Neither the right of a state to attach conditions when licensing a sister state corporation to do local business, nor its power to tax the corporation in respect of such business, when licensed, can sustain impositions which, in the guise of permit charges or franchise or excise taxes, result in direct burdens on interstate commerce or in the taxation of property beyond the confines and jurisdiction of the state."

And upon Crew Levick Co. v. Commonwealth of Pennsylvania, 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295, wherein it is said:

"A state tax on the business of selling goods in foreign commerce, measured by a percentage of the entire business transacted, is both a regulation of foreign commerce and an impost or duty on exports, and is therefore void."

The law as thus declared is well established and it is unnecessary to refer to the many decisions of the Supreme Court in which it is announced. But it will be observed here that this tax does not purport to be imposed upon the business of selling goods in interstate or foreign commerce, nor upon the transportation thereof. It is a tax levied as an excise upon the occupation of plaintiff in error as a manufacturer; the

8 F.(2d)—29

same being measured by the proceeds of the same being measured by the proceeds of the sales of its manufactured products. The result is not different from that reached by ascertaining the value in the factory before sale except that the computation is thus made precise and not dependent upon estimate or appraisal. The case falls rather within the principle announced in Hump Hairpin Co. v. Emmerson, 258 U. S. 291–294, 42 S. Ct. 305, 307 (66 L. Ed. 622). It is there held:

"Where a state law for taxing foreign corporations for the privilege of doing local business bases the tax upon the capital stock actually represented by property located and business transacted within the state, plainly intending not to tax interstate commerce, and is reasonable as to amount and free from discrimination in favor of local corporations, a tax assessed under it will not be unconstitutional."

See, also, Union Tank Line Co. v. Wright, 249 U. S. 275, 39 S. Ct. 276, 63 L. Ed. 602, and Ficklen v. Shelby County Taxing District, 145 U. S. 1, 12 S. Ct. 810, 36 L. Ed. 601.

The latter case was distinguished in Crew Levick Co. v. Commonwealth of Pennsylvania, supra, but the doctrine announced was not impaired. It was sought in the Crew Levick Case to extend that doctrine to cover a state tax on the business of selling goods in foreign commerce, but in this case the tax is not imposed upon the business of selling in interstate or foreign commerce, but is based upon the value of goods manufactured in St. Louis; that value being arrived at from the sales made. The plaintiff in error is not a merchant selling goods generally and in many jurisdictions, but is a manufacturer, and the tax imposed has relation only to the value of its manufactured product and to no other property or sales.

This same state law and these same ordinances have already been before the Supreme Court upon writ of error to the Supreme Court of the state of Missouri, by which the ordinances had been upheld. American Manufacturing Co. v. St. Louis, 250 U. S. 459, 39 S. Ct. 522, 63 L. Ed. 1084. It was there held:

"The question whether a state law or tax deprives a party of constitutional rights depends upon its practical operation and effect. An ordinance conditioning the right to manufacture goods within a city upon the payment of a license tax computed upon the amount of the sales of the goods so manufactured, held, a tax upon the business of manufacture within the city, and not a tax

upon the sales. Such a tax when computed upon the sales of goods manufactured in the city under the license, but removed, and afterwards sold, beyond the state, does not impose a direct burden on interstate commerce or, when the manufacturer is a sister-state corporation, deprive it of property without due process."

In the body of the opinion the distinction to which we have already adverted is clearly made. The court said:

"No tax has been or is to be imposed upon any sales of goods by plaintiff in error except goods manufactured by it in St. Louis under a license conditioned for the payment of a tax upon the amount of the sales when the goods should come to be sold. The tax is computed according to the amount of the sales of such manufactured goods, irrespective of whether they be sold within or without the state, in one kind of commerce or another; and payment of the tax is not made a condition of selling goods in interstate or in other commerce, but only of continuing the manufacture of goods in the city of St. Louis. * * *

"In the outcome the tax is the same in amount as if it were measured by the sale value of the goods but imposed upon the completion of their manufacture. The difference is that, for reasons of practical benefit to the taxpayer, the city has postponed payment until convenient means have been furnished through the marketing of the goods.

"In our opinion, the operation and effect of the taxing ordinance are to impose a legitimate burden upon the business of carrying on the manufacture of goods in the city; it produces no direct burden on commerce in the goods manufactured, whether domestic or interstate, and only the same kind of incidental and indirect effect as that which results from the payment of property taxes or any other and general contribution to the cost of government. Therefore, it does not amount to a regulation of interstate commerce. * * * Our recent decisions cited in opposition to this view—Crew Levick Co. v. Pennsylvania, 245 U. S. 292–297 [38 S. Ct. 126, 62 L. Ed. 295], Looney v. Crane Co., 245 U. S. 178, 188 [38 S. Ct. 85, 62 L. Ed. 230], and other cases of the same kinds referred to therein—are so obviously distinguishable that particular analysis is unnecessary."

It is true that the Supreme Court rested its decision largely upon the operation and effect of the tax scheme as stated in the opinion of the state court; but that state-

ment in all respects accords with the facts as disclosed by the record before us and as substantially conceded by counsel for plaintiff in error. The language of the ordinances in question was before the Supreme Court; at least the section under which the tax was levied, and we must regard the decision of the Supreme Court in that case as declaring the law in this.

This same case was before this court at a former term. 296 F. 899. A demurrer had been sustained to the petition, and the case came here from a judgment on that ruling. This court said:

"We are precluded from determining the real nature of the tax as expressed by the ordinances of St. Louis, because we are confined, by reason of the case having been determined on the averments of the plaintiff's petition, to the nature of the tax, as that petition describes it."

Now, upon full hearing, the true nature of the tax sufficiently appears. It follows that the judgment below should be affirmed; and it is accordingly so ordered.