70 So.2d 273

## COLLINS

v.

## BAY CITY EXPORT LUMBER CO.,
Inc. et al.

I Div. 522.

Supreme Court of Alabama.

Jan. 21, 1954.

Si Garrett, Atty. Gen., and H. Grady Tiller and Wm. H. Burton, Asst. Attys. Gen., for appellant.

McCorvey, Turner, Rogers, Johnstone & Adams, Mobile, for appellees.

310

PER CURIAM.

This case has come here by appeal taken by the License Inspector of Mobile County from what the trial judge and the parties treated as a final judgment in a declaratory proceeding brought by appellees against appellant, as such license inspector, to determine their liability, respectively, for a license which the inspector claims is owing by them to the State.

There are several matters which suggest themselves that are not relied on nor argued by counsel. One is that the complainants each have no interest in the status and claim of the others, except in the principle of law involved. While that relationship does not give them a common interest in the subject matter of the suit, Roanoke Guano Co. v. Saunders, 173 Ala. 347, 56 So. 198, 35 L.R.A.,N.S., 491; Southern Steel Co. v. Hopkins, 174 Ala. 465, 57 So. 11, 40 L.R.A.,N.S., 464; United States Fidelity & Guaranty Co. v. Benson Hdw. Co., 222 Ala. 429, 132 So. 622; Lee v. City of Birmingham, 223 Ala. 196, 135 So. 314; Ruffin v. Crowell, 253 Ala. 653 [10], 46 So. 2d 218, no such point is made by counsel. So we will not further notice it.

Another situation is that the pleadings consist of a bill for a declaratory judgment and a demurrer to it. The decree recites a submission for decree on demurrer and overrules it in proper form, and then quotes from the briefs of counsel such features as justify him (the judge) in considering the respondent as having filed an answer admitting the allegations of the bill, and upon that status decrees that complainants are not liable for the tax sought to be imposed and that they should pay the costs for which execution is ordered.

The irregularity here is in not submitting for final decree after overruling the demurrer, and in that there was no answer making an issue and no decree pro confesso. A submission for final decree should be ordered and a note of testimony made, Equity Rule 57 et seq. Code 1940, Tit. 7 Appendix, and then only after a decree pro confesso has been rendered upon a failure to answer after the demurrer was overruled. Equity Rules 24 and 43. But such irregularity may be waived and the decree is not void. Atkins v. Atkins, 253 Ala. 43, 42 So.2d 650.

The appeal was taken within a week after the decree was rendered. So that we will treat the appeal, as the assignments of error do, as presenting the decree overruling the demurrer and as finally granting complainants full relief as prayed

for. We take the allegations of the bill as admitted. It alleges that complainants are each resident citizens of Mobile County, Alabama, or respectively a corporation organized and existing under the laws of Alabama. It then refers to Title 51, section 546, Code, which fixes a state license of $100 on "Each wholesale dealer, or jobber of lumber and timber and for each wholesale dealer in lumber and timber on commission whether maintaining an established place of business or not". The balance of the statute need not be here set out. The bill alleges that complainants and each of them are engaged in exporting lumber (the brief admits that they are engaged in the wholesale lumber business in Mobile County). That all the lumber bought by them is for export, and received and handled by each of them as a commodity for export and is bought and sold exclusively as export items in foreign commerce, with the exception of a few odds and ends not up to specifications and of insignificant comparative value. During the years in question the business of each of them annually extended to between $500,000 to $1,000,000, with rare exceptions. The bill alleges that the nature of the business of each of them is that "they buy lumber from various sawmills and other sources within the state of Alabama and neighboring states; this lumber is shipped to that particular complainant purchasing it to be delivered at the Alabama State Docks at Mobile, Alabama, with all bills of lading marked 'For Export'; some such shipments are made to other seaports, but in all instances it is purchased by and shipped to complainant for export." There is alleged to be an "infinitesimally small percentage of total sales" which do not get in export because not up to specifications. The bill of complaint does not allege that a bill of lading consigning the lumber to a foreign port was issued on which it was first moved to complainants at Mobile for some such purpose as "milling in transit". It was consigned to complainant at Mobile, who has purchased and paid for it. It was then reshipped by complainant on a new bill of lading to fill orders for lumber of certain specifications. They could do with it what they thought best.

The fact that the bills of lading to them were marked "For Export" meant nothing of legal importance here involved.

The result here sought is controlled rather by the Import-Export Clause of the Federal Constitution, which is Article 1, section 10, cl. 2, than the Commerce Clause, which is Article 1, section 8, cl. 3.

The Commerce Clause confers upon Congress the power to regulate commerce with foreign nations and among the several states, without any other provision. The Import-Export Clause, supra, provides that no state shall lay any imposts or duties upon imports or exports without the consent of Congress.

The Supreme Court of the United States in construing the Commerce Clause has called attention to the fact there are no prohibitions and no limitations expressed in it, but that because of the power to regulate thus conferred upon Congress, that power was taken away from the states except that the states in the exercise of their police power may prescribe certain phases of conduct necessary to that end and may tax local incidents which affect interstate commerce, but such tax may not be laid directly on commerce or unduly burden commerce and must not be discriminatory against commerce; but recognizes the duty and obligation of interstate commerce to pay its way in government, subject to those limitations expressed above—sometimes referred to as qualifications. Those principles have been applied and consistently maintained by the United States Supreme Court and are set out in our own cases. Sanford Service Co. v. City of Andalusia, 256 Ala. 507, 55 So.2d 856; Sanford v. City of Clanton, 31 Ala.App. 253, 15 So.2d 303; Graves v. State, 258 Ala. 359, 62 So. 2d 446. See, Freeman v. Hewit, Director, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265; Morgan v. Commonwealth of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317; Interstate Transit Co. v. Lindsey, Clerk, 283 U.S. 183, 51 S.Ct. 380, 75 L.Ed. 953; Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573; McGoldrick v. Berwind-White Coal Mining

Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565; Puget Sound Stevedoring Co. v. Tax Comm. of State of Washington, 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68; Joseph v. Carter & Weekes, 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993; Caskey Baking Co. v. Commonwealth of Virginia, 313 U.S. 117, 61 S.Ct. 881, 85 L.Ed. 1223; Hopkins v. United States, 171 U.S. 578, 19 S.Ct. 40, 43 L.Ed. 290; Ficklen v. Taxing District, 145 U. S. 1, 12 S.Ct. 810, 36 L.Ed. 601.

Referring to some of those cases we note that in the McGoldrick case, supra, a local activity was allowed to be taxed when it consisted of the delivery of merchandise at the completion of a movement in interstate commerce when that delivery was also the completion of a contract of sale of such property.

In Freeman v. Hewit, Director, supra, it was noted that a state tax could sometimes properly fall on an incident of interstate commerce for the purpose of making commerce bear its fair share of the cost of local government whose protection is enjoyed.

In the case of Hopkins v. United States, supra, it was held that a livestock commission merchant was not engaged in interstate commerce although stock is shipped to him from another state, consigned to him for sale and sold for shipment to other states or foreign countries, and although he pays drafts drawn against the consignments of stock to him for sale or may have previously loaned money to aid in conditioning the stock for market and may have taken a mortgage on it. He does not buy and sell on his own account, but acts as broker for the sale in interstate commerce.

In Ficklen v. Taxing District, supra [145 U.S. 1, 12 S.Ct. 812], taxpayers rented a room in the town in which they resided. They used no capital and had no merchandise, and did not buy or sell their own products, but were engaged in negotiating sales for their principals in foreign states of goods to be shipped in interstate commerce. It was said: "Where a resident citizen engages in general business subject to a particular tax, the fact that the business done

chances to consist, for the time being, wholly or partially in negotiating sales between resident and nonresident merchants of goods situated in another state does not necessarily involve the taxation of interstate commerce, forbidden by the constitution," but it was also said what position they would have occupied "had (they) simply transacted business for nonresident principals, is an entirely different question, which does not arise upon this record."

If the questions here involved were controlled by those principles it would not be a difficult task for us to hold that the license here in question is not prohibited by the Commerce Clause of the Constitution. It is not subject to any of the prohibitions which the Supreme Court of the United States has laid down and does not exceed the limitations beyond which local laws must not extend.

■ But it has been distinctly held by the Supreme Court that the Import-Export Clause, supra, does not justify an application of the broad limitations which have been extended to the Commerce Clause. Crew Levick Co. v. Commonwealth of Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; Fargo v. Stevens, 121 U.S. 230, 7 S.Ct. 857, 30 L.Ed. 888; Philadelphia & Southern Mail S. S. Co. v. Commonwealth of Pennsylvania, 122 U.S. 326, 7 S. Ct. 1118, 30 L.Ed. 1200; Freeman v. Hewit, Director, supra; J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365; A. G. Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865; Richfield Oil Corp. v. State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 160, 91 L. Ed. 80.

Referring to some of those cases in detail, we observe that it is said in Richfield Oil Corp. v. State Board of Equalization, supra, that the Import-Export Clause of the Federal Constitution is not coterminous with the Commerce Clause. There are certain qualifications which have been read into the Commerce Clause (as demonstrated by the cases and principles cited above, such as bearing a fair share of the cost of the local government, from which it receives

benefits, and sustaining certain non-discriminatory charges and licenses). It is said that those qualifications cannot be read into the Import-Export Clause for "it prohibits every State from laying 'any' tax on imports or exports without the consent of Congress. * * * It would entail a substantial revision of the Import-Export Clause to substitute for the prohibition against 'any' tax a prohibition against 'any discriminatory' tax."

The tax there under consideration was a sales tax measured by the gross receipts derived from the sale. Appellant was engaged in producing and selling oil and oil products. It contracted to sell oil to the New Zealand government. The price was f. o. b. ship Los Angeles for export to New Zealand, payment to be made in London. The oil was pumped to Los Angeles and put in tanks. It was then pumped into the vessel for transporation to New Zealand. The tax had been declared by the California court to be an excise tax for the privilege of conducting a retail business, measured by gross receipts from sales, and was not laid on the consumer, and was not a tax imposed because of the sale, but a retail sales tax upon receipts from the sale of oil. Therefore, it was held by the United States Supreme Court that to the extent that the sales tax is measured by the receipts from the sales thus made and exported to New Zealand, it constituted an impost on exports and violated the Import-Export Clause of the Federal Constitution. The same principle was declared in A. G. Spalding & Bros. v. Edwards, supra.

In Crew Levick Co. v. Commonwealth of Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 128, 62 L.Ed. 295, referring to Ficklen v. Taxing District, supra, it was said it "is near the border line". And that a tax imposed upon the business of selling goods in foreign commerce, insofar as it is measured by the gross receipts for merchandise shipped to foreign countries is in effect a regulation of foreign commerce or an impost upon exports within the meaning of the pertinent clauses of the Federal Constitution: that while "no question is made as to the validity of the small fixed tax of

$3 imposed on wholesale venders doing business within the state in both internal and foreign commerce; but the additional imposition of a percentage upon each dollar of the gross transactions in foreign commerce seems to us to be, by its necessary effect, a tax upon such commerce, and therefore a regulation of it, and, for the same reason, to be in effect an impost or duty upon exports."

■ It is settled that the imposition of an income tax measured by gross receipts is a burden on interstate commerce when so imposed. Fargo v. Stevens, supra; Philadelphia & Southern Mail S. S. Co. v. Commonwealth of Pennsylvania, supra. The same principle of course applies to exports. Freeman v. Hewit, Director, supra.

■ Those authorities also hold that a sales tax is prohibited by the Import-Export Clause if it is measured by the gross receipts of sales completed by delivery of the goods to a carrier for foreign commerce. The holding is that the completion of the sale is coincident with the beginning of the export and, therefore, a tax based upon such sale carries with it an impost on its exportation, contrary to the Import-Export Clause of the Constitution.

It would seem that such a tax would not, by that circumstance alone, violate the Commerce Clause as held in the Hopkins case, supra. But whether so or not the cases distinctly hold that it would violate the Import-Export Clause.

The question here is whether or not the license tax of $100 flat is imposed on a feature of the process of exporting goods. It is not every activity connected with such exportation which is immune. It has been held that if the tax is on the handling of goods designed for export it is not in violation of the Import-Export Clause, although a tax on receipts from a sale of such goods in transit for foreign delivery is a tax on the goods themselves. The case making that distinction is Canton R. Co. v. Rogan, 340 U.S. 511, 71 S.Ct. 447, 95 L.Ed. 488. That case was with reference to a franchise state tax on steam railroads measured by

its gross receipts. The railroad claimed immunity in part under the Import-Export Clause. A substantial portion (specified) of its freight moving to and from port by the railroad, consisted of exports and imports, from which it derived gross receipts, the amount of which was reported. The court observed that if that were a tax on the articles of import or export we would have the kind of problem presented in A. G. Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865; the Richfield case, supra, and others cited. But the tax there considered was not on the articles of import or export, nor the equivalent to a direct tax on them. That the tax was on the *goods* in the Spalding and Richfield cases, supra, but on the *handling* of them in that case, Canton R. Co., supra [340 U.S. 511, 71 S.Ct. 449], and "when the tax is on activities connected with the export or import the range of immunity cannot be so wide." And "to export means to carry or send abroad; to import to bring into the country. Those acts begin (as to exports) and end (as to imports) at water's edge"; and so it was held in A. G. Spalding & Bros. v. Edwards, supra [262 U.S. 66, 43 S.Ct. 486], where it was said as to a sales tax on baseballs, etc., that "the very act that passed the title and that would have incurred the tax had the transaction been domestic, committed the goods to the carrier that was to take them across the sea, for the purpose of export and with the direction to the foreign port upon the goods. The expected and accomplished effect of the act was to start them for that port." The sale was effected by delivery to the carrier of the goods starting on its course of exportation. The tax was on the sale and therefore on the export. That was also the legal status of the Richfield case, supra. But in the Canton case, supra, there was no necessity to deliver to the carrier starting the export to create the tax event. When the railroad unloaded the goods from its cars at the port for export it had performed the act which gave rise to its income which was taxed, and that was before the goods were delivered to the carrier at the water's edge in the start of transportation as an export.

Here the tax is not measured by the amount of the receipts from sales, but a flat sum on the business of conducting a wholesale enterprise. In the Richfield case, supra, there was involved a retail sales tax measured by the gross receipts of such sales, levied on retailers. In the instant case there is involved a tax levied on wholesalers in a fixed sum.

■ A sale has the same qualities and elements whether it is at retail or wholesale. A tax measured by the receipts from an exclusively wholesale business has the same pertinent qualities as if it were a retail sales business.

■ ■ So that the next inquiry is whether the tax is distinguishable in the respect at hand because it is a flat sum rather than measured by receipts from the sales. In the Crew Levick Co. case, supra, the court passed over the small fixed tax of $3 because no question was raised as to it and because, we suppose, it was negligible in amount. But the Import-Export Clause does not prohibit the tax merely because it is measured by the amount of receipts. But it prohibits *any* impost or duty (which is a tax) on imports or exports. In the Spalding case, supra, it does not appear how the tax was measured. The question was said to be whether a sale was a step in exportation, so as to make it immune from taxation. The overt act of delivering the goods to the carrier as an incident of the sale was said to mark the distinction. No emphasis was placed on the formula for measuring the tax.

■ It seems to us that an analysis of the foregoing cases shows that the controlling principle is not dependent on how the tax is measured but upon what it is laid. We see no reason why it would not violate that immunity to lay a tax in a flat amount on the business when the business is that of selling goods completed by delivery into export commerce, when it is prohibited if the levy is based on the income from that source. So that, we think, the cases mean that if the tax has, as an element of its application, a delivery of the

:goods to a carrier for export, it is prohibit-·ed by the Import-Export Clause.

The trial court was correct in so holding, ·and its decree should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of ·the Chief Justice under authority of Title 13, section 32, Code and was adopted by the ·Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and CLAYTON, JJ., concur.