Miller, State Revenue Agent, *v.* Illinois Cent. R. R.
Co.*

(In Banc.  Feb. 28, 1927.)

[111 So. 558.  No. 25853.]

1. Taxation. *Foreign railroad company, engaged in both intrastate
   and interstate commerce within state, held not liable for in-
   come tax before 1924 (Laws 1924, chapter 132; Laws 1912,
   chapter 101, section 4, as amended by Laws 1914, chapter 116).*
   Before Laws 1924, chapter 132, went into effect, foreign railroad
   doing business within state and engaged in both intrastate and
   interstate commerce was not liable for income tax, since Laws
   1912, chapter 101, as amended by Laws 1914, chapter 116, neces-
   sarily excludes from its operation such foreign railroads, when
   section 4 thereof, levying tax on all annual incomes in excess of
   two thousand and five hundred dollars, is construed in connec-
   tion with all other provisions.

2. Commerce. *State cannot tax interstate commerce in any form
   whatever.*
   The state cannot lay tax on interstate commerce in any form what-
   ever, whether the tax be on transportation of subjects of com-
   merce, receipts derived therefrom, or occupation or business
   of carrying on commerce.

3. Statutes. *Tax laws are to be strictly construed against taxing
   power and doubts resolved in favor of taxpayer.*
   Tax laws are to be strictly construed against taxing power and if
   right to tax is not plain it cannot be implied, all doubts being
   resolved in favor of taxpayer.
   Ethridge, J., dissenting.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 649, n. 36;
Commerce, 12CJ, p. 96, n. 98; Statutes, 36Cyc, p. 1128, n. 54; p. 1131,
n. 75; p. 1189, n. 72, 75, 76, 77; Taxation, 37Cyc, p. 810, n. 13, 14.  On
power of state to tax interstate commerce, see annotation in 60 L. R.
A. 649; 5 R. C. L. 796; 1 R. C. L. Supp 1528; 4 R. C. L. 359; 5 R. C. L.
306; 6 R. C. L. Supp. 331.

Appeal from chancery court of Hinds county.
Hon. V. J. Stricker, Chancellor.

·Suit by W. J. Miller, state revenue agent, against the the Illinois Central Railroad Company. Decree of dismissal, and complainant appeals. Affirmed.

*Wells, Stevens & Jones* and *J. H. Sumrall,* for appellant.

The demurrer raised the question that transportation companies are not embraced within the terms of the act. There are, of course, domestic as well as foreign railroad companies operating in Mississippi. If the contention of the Illinois Central prevails, then no railroad or transportation company is liable and the result reached by the lower court necessarily makes the act discriminatory. Beyond question *Hattiesburg Grocery Co.* v. *Robertson, Rev Agt.,* 126 Miss. 34, 88 So. 4, 25 A. L. R. 748, settled the liability of domestic corporations. See, also, section 4, chapter 101, Laws of 1912 (section 4936, Hemingway's Code), the amendment of 1914 being section 4937, Hemingway's Code.

The demurrer and argument thereon before the chancellor would exempt transportation companies. They were not especially exempted by the statute itself; but, on the contrary, there is an income tax on all annual incomes in excess of two thousand five hundred dollars. It is a flat tax. The old law is not even progressive. There is no internal evidence to exempt transportation companies. On the contrary, the language is all-embracive. It is levied upon every kind of income earned or made in Mississippi. Suppose the domestic railroads, instead of paying the tax had denied liability and presented this test case. Would the court hold that a domestic railroad company is exempt merely because it is a transportation company?

If foreign corporations are not embraced within the terms of the act, then the burden imposed falls unequally upon corporations themselves. The Hattiesburg Grocery Company was a domestic corporation. This court

held it to be liable for the taxes and the supreme court of the United States dismissed the writ of error. Certainly that case settled the liability of all domestic corporations. Now a foreign corporation may be chartered under the laws of another state and yet have all of its business and derive all of its income in Mississippi. Is there any reason why it should be exempt? The statute says that the tax is levied ''on all incomes.'' If the income was derived from business done within this state, then the tax is automatically imposed. Practical difficulties in determining the amount of taxes cannot strike down the law as unconstitutional.

It was not necessary for the statute expressly to exclude incomes derived beyond the borders of the state. When the sovereign state through its legislature imposes a flat tax on all incomes, it is manifest that the statute concerns incomes derived in Mississippi. Practical difficulties in arriving at the amount of the net income should not strike down the law or exclude or grant an exemption to a non-resident corporation doing business in Mississippi. *Baltic Mining Co..v. Massachusetts,* 231 U. S. 68, 58 L. Ed. 127.

The Illinois Central has a large mileage in Mississippi and derives a large income from business done in Mississippi. It is required to make reports to the State Railroad Commission, to our State Tax Commission and to the Interstate Commerce Commission, showing the amount of business done in Mississippi and, therefore, it is required to keep accurate records of both intrastate and interstate shipments and the amount of income from business done in Mississippi can be ascertained. That is certain which can be made certain, and in the case at bar the railroad company refused to exercise its privilege to make its own returns and is in no position to complain at the very fair assessment made by the State Tax Commission after study of all the records showing the business done for each of the years. *New Orleans, etc., R. R. Co.* v. *State,* 110 Miss. 290. For valuable an-

notation on "Income Tax on Non-Residents" see 15 A. L. R. 1326.

*May, Sanders & McLaurin* and *R. V. Fletcher,* for appellee.

*The income tax act of* 1912, *as amended by the act of* 1914, *does not embrace transportation companies.* Tax laws are strictly construed against the taxing power. 25 R. C. L. 1092, section 307; 4 R. C. L. Sup. 1621, section 307; *Anderson* v. *Durr,* 100 Ohio St. 251, 126 N. E. 57, 17 A. L. R. 82; *Schwab* v. *Doyle,* 258 U. S. 529, 42 S. Ct. 391, 66 U. S. (L. Ed.) 747; *U. S.* v. *Field,* 255 U. S. 257, 41 S. Ct. 256, 65 U. S. (L. Ed.) 617, 18 A. L. R. 1461; *U. S.* v. *Merriman,* 68 L. Ed. 244; *Eidman* v. *Martinez,* 184 U. S. 578, 583, 46 L. Ed. 697, 701, 22 Sup. Ct. Rep. 515.

Foreign railroad corporations engaged in interstate commerce are not included in section 4 of the act, within the meaning of the rule quoted. There is no exemption provided for incomes derived from operations partly within and partly without the state; there is no formula provided for computing the income derived from operations partly within and partly without the state; there is no method provided for assessing such incomes; and it seems clear that the legislature did not undertake to deal with such incomes.

Railroad corporations and railroad property were assessed prior to the passage of the statute creating the State Tax Commission in 1918 by the members of the Railroad Commission who were constituted the State Railroad Assessors. Section 6573, Hemingway's Code (section 3856, Code of 1906); section 7023, Hemingway's Code (section 4384, Code of 1906), the former statute dealing with privilege taxation and the latter with *ad valorem* taxation.

By chapter 138, Laws of 1918, sections 7769-L et seq., Hemingway's Code Supplement, the members of the

State Tax Commission were constituted state assessors
of railroads and other public service corporations, and
in these sections the imposition of taxes and the methods
for ascertaining and assessing same are provided.

It will be observed, therefore, that the taxing stat-
utes applicable to railroad corporations are entirely sep-
arate, apart and distinct from the statutes imposing taxes
and providing for the assessment and collection thereof,
of other persons and corporations. The distinction has
been clearly pointed out by Justice ETHRIDGE in *I. C. R.
R. Co.* v. *Miller, St. Rev. Agt.,* 141 Miss. 223, 106 So. 636.

Reverting then to the income tax statute which pro-
vides for the assessment of incomes by counties, the as-
sessment to be made in the county of which the taxpayer
is a resident, it becomes obvious that the legislature
was not imposing an income tax upon a foreign railroad
corporation operating in and through many counties and
operating into, out of and through the state of Missis-
sippi into other states. The method provided for the
ascertainment and assessment of the tax is not adaptable
to a tax to be imposed upon an income derived from the
transportation of commerce moving in many counties
of the state, moving partly within and partly without
the state; and applying the rule: "The assessor assesses
the railroad as a unit," it becomes manifest that the stat-
ute does not apply—as the learned chancellor concluded
—to transportation companies. This court has express-
ly adjudged that the method provided by the old law was,
and is, the exclusive method for ascertaining, assessing
and collecting the tax. *Hattiesburg Gro. Co.* v. *Robert-
son, St. Rev. Agt.,* 126 Miss. 34, 88 So. 4. See, also,
*State* v. *Piazza,* 66 Miss. 426, 6 So. 316; *State Rev. Agt.*
v. *Tonella,* 70 Miss. 701; *Ice Co.* v. *Adams,* 75 Miss. 410.

Prior to 1924 there was no taxing law imposing an
income tax liability upon transportation companies, and
particularly foreign railroad corporations deriving in-
come from operations partly within and partly without
the state. The method of assessment and collection of

taxes provided in the old law being exclusive, the formula for computing the tax being exclusive, the definition of "income" being exclusive, no officers other than the county assessor, state auditor, and county tax collector having any power or authority to enforce the statute, the state railroad assessors having no power or authority to enforce the statute, it must have been concluded by all of these officers serving in every county of the state traversed by a railroad, from the adoption of the old income tax law in 1912 until after the adoption of the new income tax law of 1924, that the state had not elected to impose an income tax liability upon transportation companies; and the effort here by the present state revenue agent is to extend the old income tax statute by engrafting upon it the liability imposed, the penalty imposed, the method of ascertaining, assessing and collecting the tax prescribed by the new income tax law to operate retroactively upon transportation companies taxed for the first time in 1924.

If the old income tax law may be extended by implication so as to levy an income tax upon the earnings of a foreign railroad corporation, derived from operations indiscriminately in interstate and intrastate commerce, then the old law is, as to appellee, unconstitutional and void, as being obnoxious and repugnant to the commerce clause of the federal constitution, sub-section 3, paragraph 8 of article 1. *Crew Levick Co.* v. *Pennsylvania,* 62 L. Ed. at 299; *Ozard Pipe Line Corp.* v. *Monier,* 69 L. Ed. 442; *I. C. R. R. Co.* v. *Miss. R. R. Com.,* 229 Fed. 253; *Oklahoma* v. *Wells, Fargo Co.,* 223 U. S. 298, 302, 32 Sup. Ct. 218, 220, 56 L. Ed. 445.

*J. H. Sumrall* and *Wells, Stevens & Jones,* in reply, for appellant.

When section 4, Act of 1912, levies "a tax on all incomes" it necessarily comprehends every person or corporation doing business in Mississippi and necessar-

ily refers to the income derived from business done or profession practiced within the confines of our commonwealth. Counsel seize upon that portion of the statute making it the duty of the assessor of each county to furnish the state auditor a list of all persons as bearing internal evidence that the act does not refer to transportation companies. But we call attention to the fact that in section 4 it is provided ''no reduction shall be made or allowed for any amount paid out or contracted for permanent improvements or betterment made to increase the value of any estate or for the increase of *capital, capital stock or assets.*''

As expressly ruled in the Hattiesburg Grocery Company case, the act has internal evidence that corporations are embraced. An individual does not have capital stock. The act is levied upon all incomes without exceptions as to any kind of corporation. We repeat, therefore, that any judicial construction that carves out or excepts transportation companies from the act necessarily amends the statute by judicial construction and, furthermore, brings around a situation where some corporations are taxed and some are not. Such a construction tends to confusion and to discrimination between corporations. Every presumption is in favor of the constitutionality of the act.

ANDERSON, J., delivered the opinion of the court.

Appellant filed his bill in the chancery court of the First district of Hinds county against appellee, under chapter 101, Laws of 1912, as amended by chapter 116, Laws of 1914, and chapter 132, Laws of 1924, to recover of the latter income taxes for the years 1918 to 1923, inclusive. The bill was demurred to by appellee, the demurrer sustained, and, appellant having declined leave to amend his bill, a final decree was entered dismissing the bill. From that decree appellant prosecutes this appeal.

The following is deemed a sufficient statement of the case made by appellant's bill to develop the questions decided. The appellee is a foreign railroad corporation, a citizen of the state of Illinois, and is a common carrier railroad engaged in both intrastate and interstate commerce. Appellee paid no income taxes for each of the years ending February 1, 1918, to 1923, inclusive. If liable for an income tax, as the bill alleged appellee was, there would be due the state for those years forty-nine thousand three hundred forty-one dollars and sixty-six cents, plus an equal amount as damages because of appellee's failure to pay such taxes when due, and plus interest at the rate of one per cent. per month, as provided by the statute. The bill alleged that appellee was liable for income taxes for the period mentioned, under chapter 101, Laws of 1912, as amended by chapter 116 of the Laws of 1914 and chapter 132 of the Laws of 1924.

One ground of appellee's demurrer was that, under the laws of this state, not until chapter 132 of the Laws of 1924 went into effect was a foreign railroad company, doing business in this state and engaged in both intrastate and interstate commerce, liable for an income tax. We decide that question alone, pretermitting the question of the jurisdiction of the chancery court to entertain the bill and other questions raised. We do this because the conclusion we have reached on the main question makes it unnecessary to decide the other questions.

If appellee is liable for the income taxes sued for, it is by virtue of chapter 101 of the Laws of 1912, as amended by chapter 116 of the Laws of 1914. Appellee's contention is, and the court below so held, that the correct interpretation of the statute in question necessarily excludes from its operation foreign railroads doing business in this state and engaged in both intrastate and interstate commerce. It is true, as contended by appellant, that section 4 of the act is broad enough by its terms to cover all persons and corporations doing business in

this state, including foreign railroad corporations engaged in both intrastate and interstate commerce in this state. That section provides that:

"There is hereby levied for the benefit of the general fund of the state of Mississippi a tax on all incomes as follows: 'On all annual incomes in excess of twenty-five hundred dollars and less a tax of five mills on the dollar.'"

But section 4 of the act is to be construed in connection with all of its other provisions. So construing it, we are of opinion that it was not the purpose of the act to impose an income tax on foreign railroad companies engaged in intrastate and interstate commerce in this state, for the reason that every other provision of the act, except section 4, dealing with the question, necessarily excludes from its operation such railroad corporations. Section 1 of the act provides, among other things, that at the time of the making of the assessment rolls of personal property for taxation:

"*The assessor of each county* shall each year demand of each person liable to assessment in his county a list of his income for the year ending February 1st of the year in which such assessment is made, in excess of twenty-five hundred dollars." (Italics ours.)

Section 2 of the act provides that persons liable for income taxes shall be furnished *by the assessor* with blank forms and that such persons shall fill out, sign, and swear to their returns *before the assessor,* or other officer authorized by law to administer oaths:

"And such assessor shall forward the same to the state auditor not later than July 1st of that year, and said state auditor shall certify the amount of tax due upon such income *so reported to the tax collector of the county in which such person resides,* on or before the 1st day of October of each year, and it shall be the duty of such *tax collector to collect* such income tax so imposed upon the person so assessed at the same time and in the same manner as is prescribed by law for the col-

lection of other taxes, and to cover the same into the state treasury as prescribed by law for other taxes." (Italics ours.)

Among other provisions in section 3 is:

"*It shall be the duty of the assessor of each county to furnish the state auditor a list of* all persons whom he may find who are subject to the above tax and who filled out the list above required, together with the names of other persons in his county not appearing thereon." (Italics ours.)

Section 8 of the act provides that:

"Any assessor who shall fail or refuse to perform the duties herein imposed shall be guilty of malfeasance in office."

The act makes no provision whatever for the separation of income derived from domestic business and income derived from interstate commerce by foreign railroads engaged in both of those kinds of business in this state, although section 4 of the act is broad enough to cover such railroad corporations.

It is unquestioned that the state cannot lay a tax on interstate commerce in any form whatever, whether the tax be on the transportation of the subjects of commerce, the receipts derived therefrom, or the occupation or business of carrying on the commerce. The imposition of such a tax would be violative of the commerce clause of the federal Constitution, subsection 3, section 8, of article 1. *Postal Telegraph Co.* v. *Adams,* 155 U. S. 688, 695, 15 S. Ct. 268, 360, 39 L. Ed. 311, 315; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295.

Tax laws are to be strictly construed against the taxing power. If the right to tax is not plain, it cannot be implied. Doubts are resolved in favor of the taxpayer. Before one is liable for taxes he must come within the express provisions of the taxing statute, 25 R. C. L. 1092, section 307 (and cases in notes).

In this state railroad corporations are assessed for taxes by the state tax commission. The scheme pro-

vided by the statute involved, if the statute applied, for the assessment by the county assessors of foreign railroad corporations, engaged in this state in both domestic and interstate commerce, of their taxable incomes in each county through which they run, it seems, would be impossible of accomplishment. The whole plan of the statute for the assessment of those liable for income taxes and the making of returns thereof seems to demonstrate that the legislature did not have in mind foreign railroads of the character of appellee. And especially is this true when taken in connection with the fact that, by the act, the legislature provided no means for the separation of the taxable income of such railroads from their nontaxable income. If the act applies to such railroads, then clearly, its purpose was to tax their income derived from interstate as well as intrastate commerce, and that could not be done, under the commerce clause of the Constitution. We think that is an additional and a strong reason for interpreting the statute as not applying to such railroads.

If appellee was due any income taxes, under chapter 101 of the Laws of 1912, as amended by chapter 116 of the Laws of 1914, then chapter 132 of the Laws of 1924 laid down the plan for the enforcement and collection of such taxes. But we are of opinion that no income taxes were imposed by our statutes on railroads of the character of appellee until chapter 312 of the Laws of 1924.

*Affirmed.*


ETHRIDGE, J.

I dissent from the majority conclusion that the statute does not apply to railroads and other corporations not situated wholly in one county.

Section 4 of chapter 101, Laws of 1912 (section 4936, Hemingway's Code), reads as follows:

"There is hereby levied for the benefit of the general fund of the state of Mississippi a tax on all incomes as follows: 'On all annual incomes in excess of twenty-five hundred dollars and less a tax of five mills on the dollar.'

"In computing incomes the necessary expenses actually incurred in carrying on any business, occupation or profession, not including remuneration to the taxpayer for personal supervision of the support and maintenance of his or her family, shall be deducted from the gross income or revenue; and the word 'income,' as used in this act, shall be deemed and taken to mean 'gross profits;' provided that no reduction shall be made or allowed for any amount paid out or contracted for permanent improvements or betterment made to increase the value of any property or estate, or for the increase of capital, capital stock or assets."

The word "person" includes corporations as well as individuals. Section 1590, Code of 1906 (section 1357, Hemingway's Code). The income tax, above quoted was held, in the case of *Hattiesburg Grocery Co.* v. *Robertson, State Revenue Agent,* 126 Miss. 34, 88 So. 4, 25 A. L. R. 748, and Id., 126 Miss. 655, 89 So. 369, to include corporations. At page 50 of this Mississippi Report (88 So. 4), the Chief Justice, speaking for the court, said:

"The contentions of counsel for the appellants are that: First, the statute does not impose a tax on corporations; and, second, the statute is void for the reason that it violates sections 112 and 135 of the state constitution and the due-process clause of both the state and federal constitutions.

"First. The tax is imposed 'on all annual incomes in excess of two thousand, five hundred dollars,' with no exception in favor of corporations. 'Each person' is required to certify to the state auditor the amount of his income for the previous year in excess of two thousand, five hundred dollars, and section 1590, Code of 1906 (section 1357, Hemingway's Code), provides that

the term 'person' when used in any statute, shall apply
to artificial as well as natural persons.   There is no merit
therefore in the contention that the statute does not im-
pose a tax on the income of corporations.''

The provisions of the act directing the assessor to
furnish the auditor with a list of persons liable for the
tax, provided for in section 3 of the Act of 1912 (sec-
tion 4935, Hemingway's Code), is for the purpose of sup-
plying the auditor with the information so that he can
require the taxpayer to make the return.   It does not
contemplate at all that the assessor should make the
assessment.   Of course, in every county, there are some
persons whose incomes would come within the provision
of the law, and, if the taxpayer did not voluntarily give
the information, the auditor would be without informa-
tion and could not therefore make up the assessment
roll or list of persons subject to the tax.   This section
expressly provides that he may take such steps as he
may deem necessary to require any such person whose
name is added to make proper return of his income.
Furthermore, the sworn certificate, provided for in sec-
tion 2 of the act is addressed to the auditor of the state
of Mississippi, and the taking of the affidavit by the
assessor is done for the convenience of the taxpayer.
It is not necessary for it to be sworn to before the asses-
sor, but it may be sworn to by the very terms of the act
before any other person authorized to administer oaths.
So all of the provisions in the act with reference to the
county assessor's activity are solely for the purpose of
giving information to the state auditor, who is required
to make up a list.   Section 4934, Hemingway's Code.
In the case of railroad companies, their returns, as stated
in the majority opinion, are made either to the tax com-
mission, since the act creating it has conferred the power
to make assessments against railroads and other like
property, or to the Railroad Commission, who had been
making assessments against railroads and other like
companies prior to conferring that power on the tax

commission. Both of these offices, as well as the auditor's office, are located in the state capitol, and the auditor is presumed to know what corporations of this character have incomes within the provision of the act and to call upon them under the terms of the act. It was not contemplated, of course, that the auditor would send income blanks to every county for railroads and like corporations, but that he would procure his information either directly from the companies themselves, or from the offices to which they are required to report their regular assessments.

By section 7769m, Hemingway's Supp. 1921, each railroad company is required to furnish a complete schedule of all its property for the purpose of taxation. Among other things provided for in such returns to be made annually is the gross amount of receipts in the preceding year, the total amount of capital stock, its par value and actual value, the value of its franchise, the gross amount from passenger and freight receipts the preceding year, and the proportion thereof earned within this state. A complete reading of the section will show that, where a return is made as therein required for *ad valorem* taxes, the auditor can easily determine the amount of income earned in the state. This is expressly required by the provisions of the statute itself. The statute, of course, is to be construed with all other statutes pertinent to the subject, and from a consideration of all of the statutes bearing on it the true meaning of the statute is to be determined.

In the case of *New Orleans, M. & C. R. Co.* v. *State,* 110 Miss. 290, 70 So. 355, the court had under consideration the construction of chapter 102, Laws of 1912, increasing privilege taxes on railroads and fixing the privilege tax to be imposed on railroads in the state, and held that it was in violation of the Constitution of the United States and that it was not to be construed so as to impose a tax on interstate commerce, but that it was

to be construed so as to be applied to intrastate business. That act, in imposing a privilege tax, provided:

"Be it enacted by the legislature of the state of Mississippi, that section 3856 of chapter 114 of the Code of 1906, levying privilege taxes on railroads, be and the same is hereby amended so that for the purpose of levying a privilege tax on railroads, such railroads are divided in five classes, first, second, third, narrow gauge and levee district, and privilege taxes are levied on them as follows:

" 'On each railroad of the first class, per mile (mileage within the levee district or districts on which levee taxes are paid, excepted), forty-five dollars,' "—and other rates for the other classes. It then provided that the Railroad Commission shall, on or before the 1st Monday in August, classify the several railroads according to their charter and the gross earnings of each, and the privilege taxes thereon shall be paid on the 1st day of December; and the findings of the said Railroad Commission shall be certified to the auditor of public accounts and the chancery clerk of the county, through which each road or road run; and any person or persons, natural or artificial, who shall exercise any of the privileges taxed herein, without first paying the tax and procuring the tax or license, as required by law, shall be subjected to the pains and penalties imposed by section 3894, Code of 1906, and to such other pains and penalties as may be otherwise provided by law.

The court, at page 301 (70 So. 359), said, in discussing the matter:

"We apprehend that counsel for appellant place too great stress on the words 'gross earnings.' It is our judgment that the words as here employed simply mean the earnings of the road. The word 'gross' is used more in contradistinction to the word 'net,' and the very fact that the legislature employed the words 'gross earnings evinces a purpose to establish a measure of taxation that is easy of determination. . . . The contention that

the words 'gross earnings' evidence a purpose to burden interstate commerce might as well be made in reference to the mileage and charter of an interstate railroad. Why not contend that an interstate railroad company is required to maintain a more substantial and costly road-bed, and also that the charter of a railroad company doing an interstate business in Mississippi discloses valuable rights and franchises, granted, perhaps, by a foreign state and necessary for the doing of an interstate business? . . . The legislature, however, could not have intended any such absurd result. Any interpretation of the statute must take into account the fact that the legislature in giving these directions is not itself directly imposing a tax upon the earnings of the railroad, but is investing an inferior tribunal or governmental functionary with the general authority to classify all railroads in five classes. This tribunal stands between the parties with authority to fix the classification and thereby equitably adjust the rights of all parties.''

At page 305 (70 So. 360), continuing the discussion, the court said:

''We cannot give to general provisions of any statute a meaning that would lead to absurdity, or that would convict the legislature of attempting to deal with a subject clearly beyond its jurisdiction. The spirit and reason of the law certainly prevail over the strict letter. Furthermore, there is room for applying the words 'gross earnings' in this statute to the gross earnings derived from the intrastate business, and not to the gross earnings of the entire system of an interstate railroad. This distinction is recognized in section 4382, Code of 1906, requiring railroad companies to file schedules with the Commission.''

I see no reason why the same good sense and logic cannot be applied here. The language is general and applicable to all if taken strictly and apart from all the other statutes, but we ought to presume the legislature intended to deal with the subject which it had power to

deal. The policy of this state with reference to taxation is to tax corporations and individuals alike. This is disclosed by section 181 of the Constitution, and also by section 112 of the Constitution. Section 181 of the Constitution, with reference to the property of private corporations for pecuniary gains, expressly provides that it shall be taxed in the same way and to the same extent as the property of individuals, showing the purpose of the Constitution framers was to secure equal taxation between individuals and corporations. The same policy is expressed in section 112, showing that the constitutional convention intended that taxation should be uniform and equal throughout the state. It is expressly declared in the first sentence of this section:

"Taxation shall be uniform and equal throughout the state."

This opening sentence of the section is a broad and comprehensive declaration of public policy to be followed and applied by all the agencies of the state government.

Something is said in the majority opinion about construing the tax law strictly in favor of the taxpayer. That rule is not the rule applicable here. The language employed by the legislature, with reference to the income tax, is broad and comprehensive. The tax is levied on all incomes not otherwise exempt by law. When a person undertakes to escape taxation imposed by a general law, and especially a general law under a constitutional scheme favoring equal and uniform taxation, the burden is clearly upon the party claiming exemption to prove that he comes within the exception or exemption. All statutes are construed against individual exemptions, rather than in favor of them. In 26 Ruling Case Law, 313, section 274, it is said:

"A claim of exemption from taxation by virtue of a statute is construed *strictissimi juris*. It must rest upon the language in regard to which there can be no doubt

as to the meaning, and the exemption must be granted in terms too plain to be mistaken.''

In the case of *New Standard Club* v. *McRaven*, 111 Miss. 92, 71 So. 289, Ann. Cas. 1918E, 274, the rule was announced that:

''One claiming to fall within a statute exempting property from taxation has the burden of proof. Statutes exempting property from taxation are to be strictly construed against the exemption.''

At page 276 of the Annotated case report of this case (111 Miss. 97, 71 So. 290), Judge POTTER, speaking for this court, said:

''The law imposes upon the complaint in this case the duty of showing affirmatively that the property in question is clearly within the terms of the exemption statute, as it is the universal law that one claiming an exemption from taxation assumes the burden of showing that he is entitled to it. *Morris Ice Co.* v. *Adams,* 75 Miss. 410, 22 So. 944.

''Statutes of exemption from taxation must be strictly construed, and the language employed must be construed most favorable to the state. *Yazoo, etc., R. Co.* v. *Thomas,* 65 Miss. 563, 5 So. 108; *Greenville Ice, etc., Co.* v. *Greenville,* 69 Miss. 86, 10 So. 574; *State* v. *Simmons,* 70 Miss. 485, 12 So. 477.''

Nothing can be gained from the contention of the appellee as to the contemporary construction, because, until the suit of *Hattiesburg Grocery Company* v. *Robertson, State Revenue Agent,* 126, *supra,* there had been no payment of the income tax. It was generally treated as being unconstitutional, and the taxpayers had not been paying the taxes. In that case, however, the court upheld the constitutionality of the act and expressly held that it applied to corporations. I can see no sound reason for making an exception in favor of railroad companies and other like companies. To make such an exception is to ingraft upon the statute an exception which the legislature has not written in it.

I think the act is clear on its face and needs no construction, and that by its terms it applies to corporations of all kinds as well as persons.