## 12338

## WESTERN UNION TELEGRAPH CO. v. W. G. QUERY *ET AL.*, SOUTH CAROLINA TAX COMMISSION

### (142 S. E., 509)

1. CONSTITUTIONAL LAW—TAXATION—TAX ON NET INCOME OF FOREIGN CORPORATION ARISING FROM INTERSTATE OPERATIONS WITHIN STATE HELD NOT UNCONSTITUTIONAL AS DEPRIVING OF PROPERTY WITHOUT DUE PROCESS (INCOME TAX ACT 1922, § 13; CONST. AMEND. 14; CONST. S. C., ART. 1, § 5).—Under Income Tax Act 1922 (32 St. at Large, p. 903), § 13, imposing a tax on all net earnings accrued and received from operations or other sources within state, tax on net income of foreign corporation arising from interstate operations conducted and transacted within state *held* not depriving of property without due process of law in violation of Federal Const. Amend. 14, and Const. S. C., Art. 1, § 5.

2. TAXATION—REMEDY UNDER FEDERAL LAW FOR REFUND OF TAXES HELD INAPPLICABLE TO REFUND UNDER STATE ACT ADOPTING FEDERAL ACT ONLY FOR PURPOSE OF DETERMINING INCOME (FEDERAL INCOME TAX ACT 1921 [U. S. COMP. ST. §§ 6336⅛A–6336⅛Z]; STATE INCOME TAX ACT 1922, § 2).—Where Federal Income Tax Act 1921 (U. S. Comp. St., §§ 6336⅛a–6336⅛z), was adopted by the state *in totidem verbis* for purpose of determining amount of income on which taxes were to be paid under provisions of State Income Tax Act 1922 (32 St. at Large, p. 897), § 2, provisions of Federal Act relating to remedy for refund of taxes are inapplicable as being outside of purview of adoption of federal law.

3. TAXATION—COLLECTION OF INCOME TAX UNDER LAW PROVIDING NO REMEDY FOR REFUND, COULD BE STAYED BY INJUNCTION (INCOME TAX ACT 1922).—Since, under Income Tax Act 1922 (32 St. at Large, p. 896), no remedy was provided for refund of taxes paid under protest, collection of tax could have been stayed by injunction.

4. TAXATION—MEMBERS OF TAX COMMISSION HELD NOT PERSONALLY LIABLE FOR COLLECTION OF INCOME TAX WHICH THEY AS TAX COMMISSION IMPOSED (STATE INCOME TAX ACT 1922).—Members of South Carolina Tax Commission being clothed with dual powers, under Income Tax Act 1922 (32 St. at Large, p. 896), of first levying the tax and then collecting it, are not personally liable for collection of tax which they as tax commission had imposed.

Before TOWNSEND, J., Richland, January, 1926. Affirmed.

Action by the Western Union Telegraph Company against W. G. Query and others, individually and as members of and constituting the South Carolina Tax Commission. Order sustaining demurrers to the complaint, and plaintiff appeals.

The order of W. H. Townsend, Circuit Judge, sustaining the demurrers, was as follows:

In this action the plaintiff seeks to recover certain income taxes paid to defendants under protest, on the ground that they were, it is contended, illegally exacted. The defendants demur on the ground that the complaint does not state facts sufficient to constitute a cause of action, in that it appears upon the face of the complaint (1) that the income taxes in question were assessed and collected in accordance with the statutes of this State; and (2) that in no event can the Tax Commissioners be held individually liable for a mistake in their construction of the tax laws; and I, at the hearing before me, suggested and heard argument on the third question, whether any action at law will lie to recover such taxes paid under protest, especially where, as in this case, the action is brought more than thirty days after such payment was made.

All counsel asked me not to dismiss the complaint on this third ground, without considering and deciding the first two questions specified and made in the written demurrers.

"The first and primary question at issue is the proper construction of the South Carolina Income Tax Act of 1922 as amended in 1924, 32 Statutes at Large, p. 896; 33 Statutes at Large, pp. 1177, 1178, as applied to foreign corporations, such as the Western Union Telegraph Company, doing business and receiving income from business done and transacted within the State of South Carolina as well as elsewhere.

"The controversy, as shown by the complaint and demurrer, may be stated briefly as follows: The plaintiff, a

nonresident corporation, during the years in question—that is, 1921, 1922, and 1923—was engaged in business as a common carrier of intelligence doing business throughout the United States, including the State of South Carolina, its business therein consisting of both intra- and interstate business. For each of said years the plaintiff submitted to the Tax Commission a return in accordance with the provisions of the Income Tax Act, in which return it was set forth that plaintiff had not received any net income for any of said years from operations or other sources within the State of South Carolina, and hence was not liable for any tax under said Act. The defendants concede that the plaintiff did not receive or earn any net income from its intrastate business—that is, business begun and completed within the State—but they contend that a proper construction of the Act requires the plaintiff to pay a tax upon its income derived not only from its intrastate business, but also upon such portion of the entire net income of the plaintiff's system as could be attributed to interstate business begun, continued or completed within the State of South Carolina. The contention of the plaintiff is that the tax applies only to income derived from intrastate business; that is, business done and completed within the State."

The plaintiff relies upon the construction given the words "business done within the State," in the case of the *Southern Railway Co. v. A. W. Jones et al.,* by Judge M. L. Smith, my predecessor as Judge of this Circuit, for which I have the highest regard, of date February 19, 1917, in construing the Annual License Tax Laws, Title 3, Art. 6, Civil Code of Laws of South Carolina 1912, which excludes transactions of interstate business or commerce, in determining the amount of gross earnings or receipts of the Railway Company for business done within the State, to be taken as the basis of assessing the annual license fee to be paid by the Railway Company for the privilege of doing business in this State *(Pacific Express Company v. Seibert, State*

*Auditor,* 142 U. S., 339; 12 S. Ct., 250; 35 L. Ed., 1035), and also on the recent case of *Converse v. Northern Pacific Railway Company* (C. C. A.), 2 F. (2d), 959.

In the *Converse case,* the Circuit Court of Appeals well said:

"We are unable to agree with the trial Court that the above phraseology, when used in a taxing statute affecting the business of a carrier crossing the State line, must always be given the meaning which the Supreme Court gave it in the above [*Seibert*] *case.* Obviously, the words themselves may mean either purely intrastate business or intra- or interstate business which comes within the State. Therefore, whenever such terms are used in a statute, they must be construed in accordance with the intention of the Legislature in enacting the particular statute."

In the statute now under consideration, the State of South Carolina adopted the Federal Income Tax Law for the purpose of determining the amount of net income upon which income taxes are to be paid to this State—that is, for the purpose of fixing the amount of said income tax and the payment and collection thereof—with a provision that "foreign corporation," such as this plaintiff, "doing business within this State, not required nor making returns to the government of the United States of income as accruing from business done and transacted within the State, shall make returns under oath to the Tax Commissioner of their incomes accruing from business done or transacted within the State by them * * * for the purpose of computing the amount of tax on their incomes due the State hereunder," to the end that there shall be paid to the State 33 1/3 per centum of the amount required to be paid to the United States government, subject to certain exemptions and deductions specified in the Act, as income tax on account of such net income from business done or transacted within this State. See statute above cited, and *Lancaster Cotton Mills v. S. C. Tax Commission,* 132 S. C.,

466; 129 S. E., 431. *Santee Mills v. Query et al.,* 122 S. C., 158; 115 S. E., 202. *Crescent Manufacturing Co. v. S. C. Tax Commission,* 129 S. C., 480; 124 S. E., 761.

The intention is evident in the statute that the foreign corporation should pay to the State one-third of the income tax paid the Federal government on net income from its business operations within the State, without making any distinction between intra- and interstate transactions.

The statute now under consideration differs materially from the License Tax Act under consideration in *Southern Railway Co. v. Jones,* in that this statute lays a tax on only the net income from all business done within the State. "The tax only deals with that part of the fruits of 'interstate' commerce which remains as the net proceeds after all the immediate burdens of the commerce have been discharged, and such net profits are merged in the assets of the corporation." *United States Glue Co. v. Town of Oak Creek,* 161 Wis., 211; 153 N. W., 241; Ann. Cas., 1918-A, 421, affirmed in 247 U. S., 321; 38 S. Ct., 499; 62 L. Ed., 1135; Ann. Cas., 1918-E, 748. See, also, *Peck v. Lowe,* 247 U. S., 165; 38 S. Ct., 432; 62 L. Ed., 1049. *Shaffer v. Carter,* 252 U. S., 37; 40 S. Ct., 221; 64 L. Ed., 445. *Bass, Ratcliff & Gretton, Lt., v. State Tax Commission,* 266 U. S., 271; 45 S. Ct., 82; 69 L. Ed., 282

The allocation of the proportion of net income to business done within the statute has not been questioned either before the Tax Commission, nor in this Court, except in so far as it is now argued that the statute prescribes no method for such allocation, citing *Commonwealth v. P. Lorillard Co.,* 129 Va., 74; 105 S. E., 685, and on that ground it is contended the allocation is illegal. Our statute in Section 2 requires such allocation to be made by the taxpayer in his returns to the Tax Commission; and, in case the taxpayer fails to make such allocation, the Tax Commission is required to make it; and in Section 4 the commission is authorized to formulate and promulgate such rules and regu-

lations as are necessary for the purpose of such allocation. Such provisions were absent in the Virginia statute; and such delegation of administrative power to the Tax Commission and its action thereunder is legal. *Charleston Oil Co. v. Carter,* 131 S. C., 466; 128 S. E., 8. Note the method of allocation adopted in New York. *People ex rel. Alpha Portland Cement Co. v. Knapp,* 230 N. Y., 48, 53; 129 N. E., 202.

I, therefore, conclude that the income taxes in question were assessed and collected in accordance with law, and the demurrer interposed to the complaint by the Tax Commission is sustained, and it is so ordered.

As to the demurrer by the individual Tax Commissioners, the plaintiff contends:

"A right of action exists at common law against a tax collector to recover money wrongfully or illegally collected by him and paid to him under protest. *Elliott v. Swartwout,* 10 Pet., 137; 9 L. Ed., 373. *Sage v. U. S.,* 250 U. S., 33; 39 S. Ct., 415; 63 L. Ed., 828. *Smietanka v. Ind. Steel Co.,* 257 U. S., 1; 42 S. Ct., 1; 66 L. Ed., 99.

"Should it be held that an aggrieved taxpayer cannot sue the State to recover an income tax illegally exacted and paid under protest, then the members of the Tax Commission are personally liable for its unlawful collection, and they cannot take advantage of the State's immunity from suit. *Ward v. Love County,* 253 U. S., 17; 40 S. Ct., 419; 64 L. Ed., 751. *Atchison, T. & S. F. R. Co. v. O'Connor,* 223 U. S., 280; 32 S. Ct., 216; 56 L. Ed., 436; Ann. Cas., 1913-C, 1050. *Sage v. U. S., Supra; Ex parte Young,* 209 U. S., 123; 28 S. Ct., 441; 52 L. Ed., 714; 13 L. R. A. (N. S.), 932; 14 Ann. Cas., 764. *Philadelphia, Atlantic & P. Teleg. Co. v. Collector,* 5 Wall., 720; 18 L. Ed., 614. *Osborn v. Bank,* 9 Wheat., 738; 6 L. Ed., 204. *Poindexter v. Greenhow,* 114 U. S., 270; 5 S. Ct., 903, 962; 29 L. Ed., 185."

The remedies prescribed by Civil Code 1922, §§ 511 to 513, and by Section 22 of the Revenue Act of 1923, 33

Stats. at Large, p. 28, are exclusive in the cases to which they apply. "Where a remedy is created and the time within which, the method according to which, it must be pursued are prescribed as conditions under which it can be availed of, the Court has no jurisdiction to entertain proceedings for relief begun at a later time or prosecuted in a different manner." *International Paper Co. v. Commonwealth,* 232 Mass., 7, 10; 121 N. E., 510. See, to same effect, *De Soto Mining Co. v. Smith, Treasurer,* 49 S. C., 188, 192; 27 S. E., 1. The action in the instant case was not brought within the period prescribed by Section 512—thirty days after payment. It appears from Exhibit A, attached to the complaint as a part thereof, that the taxes in question were paid on the 11th of July, 1924, and this action was commenced on the 30th of November, 1925. These are the only provisions of our law allowing a recovery of taxes paid under protest. *Fourth National Bank v. Greenville,* 91 S. C., 83, 90; 74 S. E., 126. *Robinson v. City Council of Charleston,* 2 Rich., 317; 45 Am. Dec., 739. *Railroad v. Reidsville,* 109 N. C., 494; 13 S. E., 865. *Lord & Polk Chemical Co. v. Board of Agriculture,* 111 N. C., 135; 15 S. E., 1032.

Inasmuch as the plaintiff has not brought this action within the thirty days limited, after payment of the taxes, the statutory provisions cited may be dismissed from further consideration.

Nor has our State adopted the provisions of the Federal law allowing an action against the collector for the recovery of taxes illegally received. Hence there is no statutory authority for such action against the Tax Commission, unless under the conditions prescribed in the sections of the Civil Code or Act of 1923 above cited.

Could the action be maintained at common law? It certainly cannot be maintained against the Tax Commission as a department of the State government without the legislative consent of the State or upon the conditions prescribed

by the State in its statutes above cited. *Chemical Co. v. Board of Agriculture,* 111 N. C., 135; 15 S. E., 1032.

Can the action be maintained against the members of the Tax Commission as individuals? Here the statute (33 Stats. at Large, p. 1178) requires the Tax Commission to pay over the taxes collected into the State Treasury, on or before the 10th day of the month following that in which they are collected, and there is no right of action against them for the recovery of the taxes which they are required by the statute to pay into the State Treasury. *Cary v. Curtis,* 3 How., 236; 11 L. Ed., 576.

The plaintiff's complaint in this case is based purely upon the question of interpretation of the State Income Tax Act. There is no contention that, if the Act is allowed to stand as interpreted by the Tax Commission, it would violate any provision of the Federal or State Constitutions. The State Tax Commission must certainly exercise its judgment and discretion in reading and construing the statute which they are directed to administer and enforce. This being the case, the Tax Commissioners are not individually chargeable with liability on account of mistake or error of either law or fact in administering the duties which the statute imposes upon them.

"It has long been considered of the very highest importance that, when questions, either of law or fact, are referred to the judgment of an officer selected for the purpose of passing upon them, he should be guarded by such rules of protection that, in acting, he should be under no concern regarding personal consequences, so that the free exercise of an unbiased judgment may be expected from him. To insure to him the necessary feeling of security, it is necessary that he be altogether exempt from responsibility to such interested parties as may be dissatisfied with his conclusions, and who might be inclined, if the law permitted it, to call him to personal account for his mistakes or faults of judgment, and endeavor to recover from him a compensation for

any loss that may have suffered as a result of his action. The policy and justice of this exemption are so plain and reasonable that the rule meets with universal assent, and is applied in all cases where functions of a judicial nature are exercised. 'They who are intrusted to judge ought to be free from vexation, that they may determine without fear; the law requires courage in a Judge, and therefore provides security for the support of that courage.' 'Judges have not been invested with this privilege for their own protection merely; it is calculated for the protection of the people by insuring to them a calm, steady, and impartial administration of justice.' And this principle of protection is not limited in its application to the Judges of Courts, but extends to all officers who have duties to perform which in their nature are judicial, and which are to be performed according to the dictates of their judgment. * * * In many of these cases it will be perceived that the officer who is held exempt is one who, in the main, performs ministerial functions only; but this is unimportant, if in the particular case complained of he was exercising a discretionary authority, or one which, by law, was confided to his deliberate judgment.

"If the duties of assessors are in their nature judicial, then the principle applies, and they are entitled to rely upon it for their protection. The proper remedy for erroneous decisions on their part will then be seen to be, not a suit at law to hold them to personal responsibility, but some direct proceeding to correct the error, and prevent the injurious consequences likely to flow from it.

" 'In the imperfection of human nature,' it has been said by an eminent Judge, 'it is better that an individual should occasionally suffer a wrong than that the course of justice should be impeded and fettered by constant and perpetual restraints and apprehensions on the part of those who are to administer it.' But the law does not intend that wrong shall result in any case; it gives remedies which are supposed to

be adequate for all wrongs, and we are to see now whether the particular remedy of a personal action at law is given against assessors."

"That the duty of these officers calls into action the judicial function is unquestionable."   Cooley on Taxation, Vol. 4, p. 3229.

"Since the assessment of taxes is a *quasi* judicial act, those who are charged with the duty of making the assessment are not liable at common law for mere errors or mistakes of judgment to private persons injured, even though the assessment is excessive, if the assessment is within their jurisdiction."   51 L. R. A. (N. S.), p. 138.

"In New York it has been held that, if tax officers in the exercise of an actual jurisdiction over person and subject-matter commit an error, their action, though reviewable in a proper proceeding, is not void, and their assessment is protected against the collateral attack of an action to recover back the assessment, as they themselves would be."   Cooley on Taxation, Vol. 3, p. 2591.

"While officers are liable for negligence in the performance of ministerial duties, no such liability is recognized in the case of discretionary or judicial duties.   *   *   *   In the third place are the vast number of officers not holding Courts, but discharging executive and administrative functions, whose discharge involves the exercise of such discretion."   29 Cyc., p. 1443.

"Assessors are not personally liable at common law for errors or mistakes in judgment in making an assessment, even though it is excessive, if it is within their jurisdiction. The assessment of taxes is a *quasi* judicial act, and assessors are protected by the general rule in accordance with which it is held that officers performing duties of a judicial nature cannot be called to account for their decisions in any other tribunal."   26 R. C. L. "Taxation," § 420, p. 467.

It is therefore ordered, adjudged, and decreed that the demurrers interposed to the complaint be, and hereby are, sustained, and the complaint dismissed.

*Messrs. Francis R. Stark, Francis N. Whitney, Samuel C. Bowman,* and *Nelson & Mullins,* for appellant, cite: *Distinction between general classes affected by the act, citizens and nonresidents:* 122 S. C., 158; 129 S. C., 480. *"Business done and transacted within the state":* 35 L. Ed., 1035; 94 A. S. R., 824; Sec. 413, Code. *Implication cannot be used to construe a taxing statute unfavorably to a taxpayer:* 263 U. S., 176; 258 U. S., 529; 157 U. S., 602; 255 U. S., 257; 245 U. S., 151; 192 U. S., 38; 184 U. S., 578; 181 U. S., 264; 2 Fed. (2nd), 959; 229 Fed., 892; Fed. Cas., 16690; L. R., 4 H. L., 100, 122. *Equitable considerations have no place in the construction of a revenue statute:* 36 Cyc., 1189; 2 Fed. (2nd), 959; 178 U. S., 510. *Where the statute does not provide a method of allocation the commission is powerless to improvise one of its own making:* 257 U. S., 478; 12 Fed. (2nd), 744; 105 S. E., 683; 6 Fed. (2nd), 526; 115 S. E., 341; 8 Fed. (2nd), 529. *Personal liability of members of tax commission:* 253 U. S., 17; 223 U. S., 208; 132 U. S., 17; 111 U. S., 38; 13 L. Ed., 405; 41 So., 190; 3 Williston on Contracts, Sec. 1603; Judson, Tax., Sec. 651; Mechem, Agency (2nd Ed.), 1440; 289 Fed., 843; 10 Peters, 137; 21 L. Ed., 63. *In order to recover taxes paid involuntarily, it is sufficient to show that there was implied duress:* 26 R. C. L., 457; 223 U. S., 280. *Levy not authorized by the legislature here:* 115 S. E., 202. *If meaning debatable the doubt should be resolved in favor of taxpayer:* 181 U. S., 264; 17 Wall., 496; 11 Ex., 191; 192 U. S., 397. *No intention to authorize such levy:* 216 U. S., 1; 262 U. S., 413; 247 U. S., 321; 252 U. S., 37; 254 U. S., 113; 266 U. S., 271. *Tax commission incompetent to authorize this tax:* 111 Fed., 71; 173 Fed., 502; 125 U. S., 18; 47 Ind., 511; 42 Fed., 90; 117 S. W., 406; 257 U. S., 478; 12 Fed. (2nd), 744. *Injunc-*

*tion against collecting any state tax is forbidden:* Sec. 511,
Code.   *Cases distinguished:* 78 S. C., 211; 39 N. E., 383;
260 Fed., 664; 51 L. R. A. (N. S.), 158; 14 N. E., 431;
258 U. S., 34.   *Courts must be given opportunity of con-
testing or confirming the charge thus imposed; failing this
there is lack of due process:* 95 U. S., 37; 96 U. S., 97.

*Messrs. John M. Daniel, Attorney General, Cordie Page,
Assistant Attorney General,* and *J. Fraser Lyon,* for re-
spondents, cite: *Income Tax Act of 1922 does lay the tax
upon net income arising from interstate commerce carried on
within the borders of this state:* 216 U. S., 206; Cooley on
Tax (4th Ed.), Sec. 672; 115 S. E., 204; 124 S. E., 761–
764.   *Cases distinguished:* 142 U. S., 339; 94 A. S. R.,
824.   *May tax net income of an interstate carrier:* 262 U.
S., 413; Sec. 24, Subd. 5, Judicial Code U. S.; Secs. 3224–
3228, U. S. Rev. Stat., not adopted in South Carolina Act
of 1922; Secs. 2–12, Income Tax Act, 1922.   *Tax Commis-
sion has authority to adopt such rules and regulations not
inconsistent with law as may be necessary for carrying out
the purpose of the Act:* Sec. 4, Income Tax Act (S. C.),
1922; 115 S. E., 202; 131 S. E., 421.

December 20, 1927.

The opinion of the Court was delivered by MR. ACTING
ASSOCIATE JUSTICE PURDY.

The plaintiff appellant is a foreign corporation.   It made
its income tax return, it appears, upon its *intrastate* business
for the years 1921, 1922 and 1923, which returns did not
show a net taxable income.   It did not include any net in-
come from its *interstate* operations carried on within the
limits of this state.   The tax commission, respondent, de-
clined to accept these returns as made, and upon examination
added thereto the net income as found by the commission,
arising from interstate operations.   The plaintiff paid this
tax on July 11, 1924, under protest.   The total amount paid
was $10,823.42.

On November 30, 1925, this action was commenced against the commission as such, and against its members individually, seeking to recover of the tax commission and of its members individually, the amount so paid. It had, on March 27, 1925, filed with the commission a claim for a refund of the amount paid. It claimed in its complaint that it was not liable for any income tax, except in respect to the net income derived from business begun and completed within the state, and that, inasmuch as the business was carried on at an actual loss, it was not liable for any tax, and that the levy as made by the tax commission on any part of its interstate business was not legal and constituted a taking of the property of the appellant without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States, and also of the South Carolina Constitution, Art 1, § 5.

The appellant claimed that there was no method provided by statute for ascertaining the net income, and that the method improvised by the commission was without authority; that, in order to prevent the penalties to which it would have been subject under the terms of the Income Tax Act of this state of 1922, it paid the sums demanded for the three years named, under protest.

The appellant claims that it filed its claim in conformity with the Federal Income Act of 1921, § 1316 (26 USCA, § 157; U. S. Comp. St. § 5951), and claims that, by virtue of that Act, it had a right to bring this action.

The tax commission and its individual members demurred to the complaint upon the grounds that the complaint does not state facts sufficient to constitute a cause of action, in that it appears upon its face that the income taxes in question were assessed and collected in accordance with the statutes of this state. The parties have entered in the record the following as the issues, raised by the demurrer:

"(1) Whether, under the Income Tax Act of 1922, in arriving at the taxable net income of a foreign corporation

doing both an intra- and interstate business, a proportionate part of its interstate earnings, and earned in South Carolina, should be included, or is the taxable net income limited to the income derived solely from intrastate business.

"(2) Are the individual members of the South Carolina Tax Commission personally liable to plaintiff and subject to refund out of their individual and personal estates, an income tax, when, in their official capacity they construe the income tax law and collect a tax under such construction, if the Court thereafter decides that such construction was erroneous and the tax therefore improperly collected.

"(3) If a tax is collected by the South Carolina Tax Commission, which tax is not authorized by the Income Tax Act, then does the collection of such a tax under the circumstances set forth in the complaint deprive plaintiff of its property without due process of law."

The matter coming on to be heard before his Honor, Judge Townsend, the demurrers were sustained by him, and his order will be reported. His Honor held:

(1) That it is the intention of the income tax statute of this state that a foreign corporation should pay an income tax on the net income from its business operations within the state, without making any distinction between intra- and interstate transactions, and concluded that such taxes were assessed and collected in accordance with the law.

(2) In reference to the remedies given by statutes: That, inasmuch as the plaintiff has not brought this action within the 30 days limited after the payment of the tax by statutory provision, the suit may be dismissed from further consideration.

(3) That the individual members of the tax commission were not made liable by statute, and could not be made liable at common law.

The complaint was therefore dismissed.

From this order, this appeal was prosecuted by the plaintiff-appellant, and the appellant has grouped the exceptions as raising the following issues:

"I. (a) As to a nonresident carrier corporation, such as the plaintiff, engaged in both inter- and intrastate commerce, does the South Carolina Income Tax Law of 1922 authorize a tax on any part of the carrier's net income other than that arising from 'within the state' operations; that is, intrastate business?

"(b) And if the Act intends to tax a proportionate part of interstate income, did it authorize the commission to assess and collect the tax which it did?

"II. Did the Legislature of South Carolina, in adopting the federal income tax law *in toto* as an integral part of the South Carolina Act, intend that the taxpayer should follow the provisions of the federal law with reference to the payment of taxes which the taxpayer believes to be illegal (that is, payment under protest), followed by claim for refund, and, if that is refused, then suit to recover?

"III. Has an aggrieved taxpayer a right of action against a tax collector individually and personally for taxes collected by him without warrant or authority of law, where the collection is made and the tax is paid involuntarily and under duress?"

The Income Tax Act of this state, of 1922, p. 903, provides:

"13. *Income from Operations or Property in this State Liable to Tax.*—Where any person, firm or corporation operates and does business and receives income in South Carolina and another, or other states, such person, firm or corporation shall pay to the tax commission an income upon all net earnings accrued and received from operations or other sources in this state."

If there be statutory authority for exacting the tax, there can be no claim that the appellant has been deprived of his property without due process of law. The respondents have rightfully undertaken to tax net income arising from *interstate* operations conducted and transacted within this state. *Atlantic Coast Line R. Co. v. Daughton,* 262 U. S., 413; 43 S. Ct., 620; 67 L. Ed., 1051. That they had ample authority to do so is shown by reference to the act and by the authorities cited by his Honor, Judge Townsend.

It is most earnestly urged, and particularly under the case of *Commonwealth v. Lorillard,* 129 Va., 74; 105 S. E., 683, that, under a statute claiming to be similar to the statute here involved, as there is no method of allocation provided by statute, the taxing power could not devise a scheme of their own by which to determine how much of the total income was derived from business done in this state. His Honor, Judge Townsend, has pointed out in his order the difference between the statute in Virginia, upon which the *Lorillard case* was predicated, and our statute, and has rightly reached the conclusion from the nature of the act, that the tax commission had authority to make the assessment and collect the tax. Having found that the tax was rightfully assessed and levied, a discussion of the other matters is largely academic.

Had the Federal Income Tax Act of 1921 and the rules and regulations promulgated by the Department of Internal Revenue in pursuance of such act, been adopted without any provisos, this Court would have to look to that act in all of its terms for deciding any question arising under it. It was adopted, however, *in totidem verbis,* "for the purpose of determining the amount of net income, upon which income taxes are to be paid under the provisions of this act, and for the purpose of fixing the amount of the said income tax the payment and collection thereof." Acts of the General Assembly of S. C., 1922, p. 897, § 2. This

act does not purport to give any rights or provide any remedies other than as stated in the declaration of its objects, which are to determine the amount of net income, to fix the amount of income tax, and provide for its payment and collection. Although adopted in its entirety, it is adopted for these specific purposes only.

The Federal Act of 1921, Section 1318 (26 USCA, § 156; U. S. Comp. St. § 5949), does not permit a suit to be brought until a claim for a refund has been filed with the commission, nor within six months from the date of the filing, unless the commissioner renders a decision within that time, nor after the expiration of five years from date of payment.

These provisions relating to the remedy are outside of the purview of the adoption of the federal statute, and, even if they had been adopted, they would have no effect in these instances, for the reason that we have found that the tax had been rightfully levied. In this connection, it might not be amiss to say that a remedy by statute was not provided to give relief to the plaintiff in this case. The Civil Code of South Carolina, Vol. 3, p. 215, § 512, provides that taxes charged upon the books of the county treasurer might be paid under protest and a suit brought within 30 days thereafter, and not afterwards. The Act of 1923, p. 28, provides that in cases where *license taxes* are required to be paid, the same might be paid to the tax commission under protest, and that the same might be recovered by suit brought within 30 days thereafter against the tax commission. It will be seen therefore that no statutory remedy was provided. In these circumstances, the collection of the tax could have been stayed by injunction. *Ware Shoals Manufacturing Co. v. Jones, Comptroller,* 78 S. C., 211; 58 S. E., 811.

As to whether suit could be brought against the individual members of the tax commission, we content ourselves with and adopt the reasoning of his Honor,

Judge Townsend, adding that the South Carolina Tax Commission is clothed with dual powers. The duty in the first instance, to levy the tax, gives the nature of a *quasi* judicial capacity, and then it is clothed with the duty of collecting the tax, and it would be unduly hampering the members of the commission in the discharge of their duties, if their dual duties could be separated to make them liable for the collection of a tax which they, as the tax commission, had imposed. It is doubtful if any competent· persons could be found to undertake to discharge the duties of this important office if they knew beforehand that they would be liable in a civil action for any mistakes of judgment that they made.

Nothing that we have said, however, shall be construed to mean that an officer attempting to collect a wholly illegal tax, which he must know to be illegal, would be protected from the consequences of this act. The authorities are clear on this point.

The judgment is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE COTHRAN: I dissent upon the grounds: (1) That the state has no authority to levy a tax on interstate commerce in any form whatever. *Miller v. Ry. Co.,* 146 Miss., 422; 111 So., 558. *Postal Co. v. Adams,* 155 U. S., 688; 15 S. Ct., 268, 360; 39 L. Ed., 311. *Crew Levick Co. v. Penn.,* 245 U. S., 292; 38 S. Ct., 126; 62 L. Ed., 295.

(2) That the state has not in the Act of 1921 attempted to levy an income tax upon receipts from interstate business, but has expressly limited it to receipts from intrastate business.

(3) That, if it could be held that the act authorized a tax upon a proportionate part of the interstate business handled in this state, no method is provided for the ascertainment of such proportion.